Noonan Estate.

27

Argued November 8, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Alban W. Curtze,* with him *C. C. Eaton* and *Brooks, Curtze & Silin,* for appellants.

*Gerald A. McNelis,* for appellee.

OPINION BY MR. JUSTICE JONES, January 10, 1949:

We approve both the reasoning and the conclusions upon which the Superior Court based its decision in this case. There are, however, certain corrections which need be made in the final order. In no event is there any occasion to reiterate the facts. Save for one exception, they fully appear in the opinion for the Superior Court: see *Noonan Estate,* 163 Pa. Superior Ct. 70, 60 A. 2d 374. As the omitted matter also goes to confirm the merit of

the decision, we shall relate it before entering upon a review of the legal principles pertinent to the questions involved.

The excerpts from the correspondence between the beneficiary and the executor set forth in the opinion of the Superior Court reveal ample basis for that Court's conclusion that the executor breached his duty to the beneficiary by withholding from him material information which he sought and to which he was entitled: see C. J. S., Vol. 34, § 554, p. 502. Executors, as well as other fiduciaries, are under an obligation to make full disclosure to beneficiaries respecting their rights and to deal with them with utmost fairness: see *Rogers v. Benz,* 136 Minn. 83, 161 N. W. 395, 397, aff'd. on rehearing 161 N. W. 1056; Schouler on Wills, Executors and Administrators, Sixth Ed., Vol. 4, § 3219.

While the derelictions of the executor in the instant case, as indicated by the correspondence already referred to, consisted of acts of omission, e.g., failure to disclose or to fulfill relevant promises, the executor's letter of April 8, 1946, to the beneficiary contained what constituted in the circumstances a positive misfeasance. Therein he expressly assigned, as an urgent reason for a speedy sale of the decedent's realty, the estate's possible escapement thereby from a claim upon a judgment against the testatrix's deceased husband (a former owner of the realty in controversy). The fact is that the lien of that judgment was then, and for years had been, extinct. Indeed, as the executor (an attorney at law) must have well known, it was, and had been, actually impossible, because of the time elapsed, to revive the lien of the judgment so as to bind the realty either in the hands of the testatrix, while yet alive, or as a part of her estate after her death: *Shareff v. Wolf,* 120 Pa. Superior Ct. 227, 229-231, 182 A. 115; *Rankin v. Rinehart,* 66 Pa. Superior Ct. 385, 391-393; see also *Henry's Estate,* 34 Pa. Superior Ct. 597, 600-601. Yet, without the slightest effort to correct this material misrepresentation, the

executor hastily went ahead with a sale of the property to his private secretary, Mrs. Beryl Blakely. The latter, on her part, was not only cognizant of the contents of the executor's misleading letter to the beneficiary (as well as of all other correspondence between them) but, as she was an experienced title examiner, she is chargeable with actual, and not merely constructive, knowledge of the patent error of law which the letter contained.

Reversal of the lower court's action does not depend upon any disregard of competent findings made below. None of the operative facts in the case is in dispute. The decision rests upon the ultimate inferences and conclusions correctly to be drawn from the uncontroverted evidence,—a function which an appellate court is fully qualified to, and does, perform in appropriate circumstances: see *Dorrance's Estate,* 309 Pa. 151, 156, 163 A. 303; *Hamilton v. Fay,* 283 Pa. 175, 179, 128 A. 837; *Miller's Estate,* 279 Pa. 30, 38, 123 A. 646; *Gongaware's Estate,* 265 Pa. 512, 514, 109 A. 276. In the situation here presented, the lower court's findings of adequacy of price and absence of fraud in fact are immaterial. The record reveals a plain and unmistakable case of an executor's breach of his fiduciary duty with full knowledge of the circumstances on the part of the improperly favored third party.

An executor is a fiduciary no less than is a trustee (Restatement, Trusts, § 6, Comment i.) and, as such, primarily owes a duty of loyalty to a beneficiary of his trust: Restatement, Trusts, § 170 (1). Under Comment p. of the latter section of the Restatement, the rule is given presently pertinent specification in the following language: "The trustee is under a duty to the beneficiary in administering the trust not to be guided by the interest of any third person. Thus, it is improper for the trustee to sell trust property to a third person for the purpose of benefiting the third person rather than the trust estate." Here, the facts support no other reasonable conclusion than that the executor, in selling the testatrix's residence

property to his private secretary, was motivated by the latter's convenience and benefit without regard for the rights of the beneficiary whose desire to pay the decedent's debts and retain the realty (whereof he was the sole devisee) was arbitrarily and even deceptively ignored by the executor. "He that is intrusted with the interest of others, cannot be allowed to make the business an object of interest to himself; because, from the frailty of nature, one who has the power, will be too readily seized with the inclination to use the opportunity for serving his own interest at the expense of those for whom he is intrusted": *Beeson v. Beeson*, 9 Pa. 279, 284.

The executor was, moreover, guilty of self-dealing, as the circumstances attending the sale disclose. Such a transgression does not lie exclusively in a fiduciary's sale of trust property to *himself*. Cf. *Downing Estate,* 162 Pa. Superior Ct. 354, 57 A. 2d 710, affirmed *per curiam* by this Court: 359 Pa. 534, 535, 59 A. 2d 903. The test of forbidden self-dealing is whether the fiduciary had a personal interest in the subject transaction of such a substantial nature that it *might* have affected his judgment in material connection: *Downing Estate,* supra, at p. 359, citing Scott on Trusts, Vol. 2, § 170.12, p. 877, and Restatement, Trusts, § 170 (1), Comment h. See also Comment c. of the same section of the Restatement which declares that "The trustee violates his duty to the beneficiary not only where he purchases trust property for himself individually, but also where he has a personal interest in the purchase of such a substantial nature that it might affect his judgment in making the sale." It will be noted that the extent of the fiduciary's disqualifying interest need not be such as "did affect his judgment" but merely such as "might affect his judgment": *Downing Estate,* supra, at p. 360.

In the instant case, the executor's interest in selling the property to his secretary was sufficiently substantial to convict him of a violation of the rule against self-dealing. It was by the executor's personal loan to Mrs.

Blakely of four-fifths of the sale price for the real estate that she was enabled to buy the property; and, as security for her indebtedness to the fiduciary so incurred, she and her husband gave to him, personally, a first mortgage of the purchased realty. Obviously, the nature of the mortgage interest was such that, upon a default by the mortgagors, the executor would be in position to take over the late trust asset for himself. And, still further, the agreement of sale embraced not only the realty in controversy but the decedent's household goods and personal chattels (save for a few excepted articles) at their appraised values as fixed by the appraisers, one of whom was Mrs. Blakely,—hardly less than indirect self-dealing, when considered in the light of the executor's favoritism for the purchaser whose self-aggrandizing capacity was of the executor's own deliberate choosing.

Where there is self-dealing on the part of a fiduciary, it is immaterial to the question of his liability in the premises whether he acted without fraudulant intent or whether the price received for his sale of trust property was fair and adequate: see *Tracy v. Central Trust Company*, 327 Pa. 77, 79, 192 A. 869, citing *Everhart v. Searle*, 71 Pa. 256, 260, where the following was approvingly quoted from Hare and Wallace's Notes, 1 Lead. Cases in Eq., p. 210,—"It matters not that there was no fraud meditated and no injury done; the rule [forbidding self-dealing] is not intended to be remedial of actual wrong, but preventive of the possibility of it." See also *Tanner's Estate*, 218 Pa. 361, 365, 67 A. 646, where a substantially similar quotation, ascribed to the notes to Fox v. Mackreath, 1 Lead. Cases in Equity 239, was adopted. It was also recognized in *Tanner's Estate* that "The cases are uniform in declaring that it matters not [when there is self-dealing] how innocent and bona fide, and free from the suggestion of fault, the transaction may be." In *Chorpenning's Appeal*, 32 Pa. 315, 316, it was said that ". . . the rule [forbidding self-dealing] is inflexible, without regard to the consideration paid, or the honesty

of intent. Public policy requires this, not only as a shield to the parties represented, but as a guard against temptation on part of the representative." In *Downing Estate,* supra, President Judge RHODES of the Superior Court succinctly summarized the rule at p. 360 as follows: "The prohibition against self-dealing is absolute; where the trustee violates it, good faith or payment of a fair consideration is not material." See also Restatement, Trusts, § 170 (1), Comment h. The situation is no different where the breach consists of the fiduciary's marked preference of a third person over the beneficiary in respect of a disposition of estate property. As in the case of self-dealing, such conduct constitutes a violation of the fiduciary's basic duty to the beneficiary. Cf. *Downing Estate,* supra, at p. 558.

In the case of an offending fiduciary, if the trust property which he improperly sold is held by or for him, the remedy is a direct setting aside of the sale upon attack by one having standing to complain, e.g., a testamentary beneficiary or *cestui que trust*: see *Tracy v. Central Trust Company* and *Chorpenning's Appeal,* supra. Here the title to the property is in a third party purchaser. Whether, despite the executor's breach of trust, she may keep her bargain, depends upon whether she was a bona fide purchaser: Restatement, Trusts, § 170 (1), Comment e.; Scott on Trusts, § 470. To be such, she must have paid value for the property without knowledge of the attendant circumstances constituting the executor's breaches. For present purposes, the merit of the lower court's finding that Mrs. Blakely paid a fair and adequate price for the property is assumed. But, she well knew, nonetheless, that the executor was preferring her as a purchaser over the beneficiary who had clearly expressed his desire to retain the property unsold. The plain import, if not the express words, of Mrs. Blakely's testimony confirms that she had positive knowledge of the trust relation and of the executor's disregard of the beneficiary's rights in the matter. Indeed, the

34

notice need not have been actual. The obvious and undeniable circumstances were such as to put her upon inquiry and so bind her with the legal equivalence of notice: *Cameron v. Peoples' Bank of Maytown*, 297 Pa. 551, 556-557, 147 A. 657; cf. also *Erie County v. Lamberton*, 297 Pa. 406, 416, 147 A. 86. The notice to Mrs. Blakely fully met the requirements of the situation. "Where a fiduciary in violation of his duty to the beneficiary transfers property or causes property to be transferred to a third person, the third person, . . . *if he had notice of the violation of duty,* holds the property upon a constructive trust for the beneficiary" (emphasis supplied) : Restatement, Restitution, § 201 (1).

It follows that Mrs. Blakely is accountable, as a matter of law, to the beneficiary for the property conveyed to her by the executor. In holding to such effect, the Superior Court also correctly concluded that the value of the use and enjoyment of the property which she had during her occupancy, as grantee, for approximately two and a half years offset any claim which she might otherwise have had for reimbursement for the cost of repairs and improvements made to the property at her expense during her tenure. Also, we approve the disallowance of the additional attorney's fee claimed by the executor at the audit of his account.

The order of the Superior Court, prescribing the decree to be entered below, inadvertently failed to include the personal chattels in the property to be accounted for by the purchaser and made no provision for the satisfaction of the mortgage placed on the realty by the purchaser. As Mrs. Blakely's purchase of the decedent's household furnishings, etc., stemmed from the same invalid agreement of sale, they, as well as the realty, should be conveyed to the testamentary beneficiary by her upon her proper reimbursement. The beneficiary should, therefore, be required to deposit with the clerk of the Orphans' Court for the joint account of Mrs. Blakely and the executor, personally, the sum of $3500 to be apportioned

between them by the court below according as their interests may appear or as they may otherwise agree, and a further sum, for the additional reimbursement of Mrs. Blakely, in an amount commensurate with the price paid by her for the personal chattels. Upon the deposit by the beneficiary of the sums above specified, the executor will satisfy of record the Blakely mortgage of the property made to him in his personal capacity; and Mrs. Blakely, joined by her husband, will execute and deliver to the beneficiary a special warranty deed for the real estate in question, free and clear of all liens and encumbrances, and also a bill of sale for the personal chattels. The time for preserving the lien of decedent's debts having expired and all debts of record having been paid, as established by the decree of the Orphans' Court upon the audit of the executor's first and final account, any residual funds of the decedent's estate will be distributable forthwith to the person or persons entitled thereto by law.

As so modified, the order of the Superior Court is affirmed at the appellants' costs, and the record remanded for the entry of a decree and further proceedings in the court below in accordance with this opinion.