J-S42018-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF ANGELA DIMATTEO | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: CASIMIRO DIMATTEO | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 362 WDA 2022 |

Appeal from the Order Entered March 2, 2022
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  No. 02-18-6412

BEFORE:   BOWES, J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.:                **FILED: JANUARY 27, 2023**

Appellant, Casimiro DiMatteo, appeals from an order entered on March 2, 2022, setting aside a conveyance of real property from the estate of Angela DiMatteo, Appellant's mother, following the removal of Appellant as executor. We affirm.

We briefly set forth the facts and procedural history of this case as follows.  On September 25, 2013, Angela DiMatteo executed a last will and testament naming Appellant as executor of her estate.  The will further stated that, should Appellant be unable to serve as executor, then his wife, Silvia Collucio DiMatteo, should serve in his stead.  On October 5, 2018, Angela DiMatteo died.  On October 18, 2018, letters of testamentary were issued to Appellant.  On December 12, 2019, Annina Radakovich DiMatteo, one of the

_____

[*] Retired Senior Judge assigned to the Superior Court.

other heirs to Angela DiMatteo's estate, filed a petition to compel Appellant to file an accounting of the estate. Thereafter,

> [a]lmost a year later, during a conference with the orphans' court, the parties reached a consent order, dated January 20, 2021, and recorded January 25, 2021. In relevant part, it required that Bodnar Real Estate perform an appraisal of the real estate at 412 Pearl Street, Pittsburgh, Pennsylvania ("Pearl Street property") within 30 days. Additionally, [Appellant] was to file state and federal fiduciary tax returns within 30 days after he received the last 1099 for estate income, receipt of which was to be provided to all counsel. [Appellant] was then to file a formal first and final account within 30 days after the tax returns were filed.
>
> On February 12, 2021, before [the arrival of Appellant's deadline] to comply with that order, Annina filed an emergency petition to remove [Appellant] as executor. Annina claimed that [Appellant] failed to adhere to the terms of the consent order, filed a $180,000[.00] claim with the estate for caretaking services, transferred the Pearl Street property from the estate to his wife and children for one dollar, and filed a claim for an executor's fee. Additionally, as a result of [Appellant's] actions and failure to adhere to legal advice, his counsel sought permission to withdraw. [Appellant] filed a *pro se* response to Annina's petition.
>
> On February 19, 2021, the orphans' court granted counsel's request [to withdraw]. Following a hearing on Annina's emergency petition, the court also revoked the letters testamentary issued to [Appellant] and directed that Warner Mariani, Esquire, be appointed administrator of the Estate of Angela DiMatteo upon proper application to the Wills Division of the Allegheny County Department of Court Records.
>
> Notably, the orphans' court bypassed the substitute executrix named in Ms. DiMatteo's Will, [Appellant's] wife Sylvia, because of her participation in [the transfer of] property from the estate to herself and [her] children.

*In re Est. of DiMatteo*, 272 A.3d 486, at *1-2 (Pa. Super. 2022) (unpublished memorandum).

Appellant challenged his removal as executor in a prior appeal to this Court. Ultimately, we affirmed Appellant's removal as executor and approved the appointment of Attorney Mariani as successor. **See id.** More specifically, and important to the current appeal, this Court determined:

Shortly after issuance of the consent order, [Appellant] sent a family settlement agreement to the other beneficiaries proposing to distribute the remaining Estate assets, apparently to resolve [the distribution of the estate] informally. He filed a status report indicating that the administration of the Estate was complete. He did this despite being directed by the orphans' court to obtain an appraisal of the Pearl Street property and to file a formal account.

Additionally, [Appellant] created a substantial conflict of interest with his fiduciary duties as executor of the Estate, when he claimed the Estate owed him $180,000[.00] for taking care of his mother prior to her death.

\*　　　\*　　　\*

Furthermore, [Appellant] engaged in self-dealing by paying his caretaking claim out of the Estate and transferring the Pearl Street property to his wife and children. We [] therefore conclude[d] that the trial court did not abuse its discretion in removing [Appellant] as executor of the Estate.

\*　　　\*　　　\*

[Moreover], the orphans' court explained that Silvia clearly was aligned with her husband by advancing his position that he was entitled to payment for caretaker services and accepting the transfer of the property. [Appellant] had conveyed a valuable parcel of real estate from the estate to his wife and children for the nominal consideration of one dollar. Silvia's participation in that conveyance severely compromised her fitness to serve as a successor executrix.

**Id.** at *3 (quotations, case citations, and original brackets omitted). No further appeal resulted.

- 3 -

On December 21, 2021, Attorney Mariani, as successor executor, filed a petition to revoke the conveyance of the Pearl Street property to Appellant's wife, Silvia DiMatteo, and their two children, Enrico DiMatteo and Rosella DiMatteo. On March 1, 2022, the trial court held a hearing on the petition to revoke. At that hearing, Appellant did not testify and, instead, invoked his right against self-incrimination under the Fifth Amendment of the United States Constitution. Silvia DiMatteo, Enrico DiMatteo, and Rosella DiMatteo also attended the hearing, but did not testify or otherwise present evidence. On March 2, 2022, the trial court entered an order voiding the sale of the Pearl Street property to Silvia DiMatteo, Enrico DiMatteo, and Rosella DiMatteo. This appeal resulted.[1]

On appeal, Appellant presents the following issues for our review:

> I. Whether the trial court's order revoking the conveyance of real [] property by Appellant[,] who[] is the former executor

_____

[1] Appellant filed a notice of appeal on March 31, 2022. On April 7, 2022, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely on April 27, 2022. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on May 31, 2022.

Silvia DiMatteo, Enrico DiMatteo, and Rosella DiMatteo, in their own right, appealed the March 2, 2022 order voiding the sale of the Pearl Street property. That appeal is docketed at 363 WDA 2022. The trial court issued a separate opinion pursuant to Pa.R.A.P. 1925(a) on May 31, 2022, that specifically addressed the issues pertaining to Silvia, Enrico, and Rosella DiMatteo.

Finally, we note that upon review of the certified record, the trial court subsequently approved the sale of the Pearl Street property to an independent third-party by order entered on May 18, 2022. Neither Appellant nor his wife and/or two children appealed that decision.

of the estate[,] constituted a surcharge action[2] and was entitled to an accounting of the estate?

II. Whether the trial court erred as a matter of law and abused its discretion when it issued an order revoking the conveyance of real property because it failed to give [] Appellant an opportunity to be heard [and precluded] Appellant [from presenting evidence]?

III. Whether the order revoking the conveyance of real property constituted a denial of the claim [] Appellant filed against the estate for services provided to the estate?[3]

Appellant's Brief at 5 (complete capitalization omitted).

In his first issue presented, Appellant argues, in sum:

Here, the [t]rial [c]ourt voided the real estate transfer made by [] Appellant that was settlement for a claim [] Appellant had against the estate. Thus, after the revocation of the deed [of] transfer of

_____

[2] Surcharge is a remedy when an executor fails "to exercise common prudence, skill and caution in the performance of [his] fiduciary duty, resulting in a want of due care." *In re Est. of Warden*, 2 A.3d 565, 573 (Pa. Super. 2010), *citing* *In re Miller's Estate*, 26 A.2d 320, 321 (Pa. 1942) (defining "surcharge" as "the penalty for failure to exercise common prudence, common skill and common caution in the performance of the fiduciary's duty ... imposed to compensate beneficiaries for loss caused by the fiduciary's want of due care"); *see also* *In re Paxson Trust I*, 893 A.2d 99, 120–121 (Pa. Super. 2006) ("a surcharge was viewed not as compensation for any possible loss, but as punishment for the fiduciary's improper conduct"). "[A] fiduciary who has negligently caused a loss to an estate may properly be surcharged for the amount of such loss." *In re Scheidmantel,* 868 A.2d 464, 494 (Pa. Super. 2005). "Before the court can impose a surcharge, it must give the executor an opportunity to be heard." *In re Est. of Westin*, 874 A.2d 139, 145 (Pa. Super. 2005), *citing* *In re Stitzel's Est.*, 70 A. 749, 750 (Pa. 1908) ("A surcharge is an adjudication against the accountant which cannot be made without notice to him and an opportunity to be heard before he is condemned.").

[3] Appellant concedes that "this [third] issue is deemed moot as [] Appellant may still pursue a claim against the estate." Appellant's Brief at 16. As such, we need not address this claim.

real property, the [e]state has been unjustly enriched. The [e]state has received the benefit of care services for approximately four years and has not had to pay for the benefit of receiving those services. Therefore, by voiding the transfer of real estate [which was] part of the settlement for services, [the orphans' court order] constituted a surcharge action against [] Appellant.

Here, [] Appellant provided care services and detrimentally relied on the payment for his services. Now that his conveyance has been revoked, [] Appellant had [the] value of services provided stripped from him and his compensation for those services has been taken away from him. Thus, such actions constitute a surcharge.

*Id.* at 12.

We adhere to the following standard of review:

When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and [whether] the trial court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, this Court will not reverse the trial court's credibility determinations absent an abuse of discretion.

*In re Est. of Aiello*, 993 A.2d 283, 287 (Pa. Super. 2010) (citations omitted).

Our Supreme Court has explained that "the power to set aside" an estate administrator's sale of real property "is delimited by Section 3360" of the Probate, Estates and Fiduciaries Code. *Est. of Bosico*, 412 A.2d 505, 506 (Pa. 1980), *citing* 20 Pa.C.S.A. § 3360. More specifically, under Section 3360:

(a) Inadequacy of consideration or better offer.--When a personal representative shall make a contract not requiring approval of court, or when the court shall approve a contract of a personal representative requiring approval of the court, neither inadequacy of consideration, nor the receipt of an offer to deal on other terms shall, except as otherwise agreed by the parties, relieve the personal representative of the obligation to perform his contract or shall constitute ground for any court to set aside the contract,

- 6 -

or to refuse to enforce it by specific performance or otherwise: Provided, That **this subsection shall not affect or change the inherent right of the court to set aside a contract for fraud, accident or mistake. Nothing in this subsection shall affect the liability of a personal representative for surcharge on the ground of negligence or bad faith in making a contract.**

20 Pa.C.S.A. § 3360(a) (emphasis added). "[A]bsent a showing of fraud, if an administrator fails to comply with his fiduciary duties in a manner evidencing neglect or bad faith, the remedy of surcharge is available under Section 3360." *Est. of Bosico*, 412 A.2d at 507. "The intent of the legislature in enacting this statute was to prevent courts from [assuming] the position of [a] super executor/administrator, and to leave essentially private transactions in the hands of the individuals involved." *In re Est. of Hughes*, 538 A.2d 470, 472 (Pa. 1988) (citation omitted).

This Court has further explained:

An executor, as a fiduciary of the estate, is required to use such common skill, prudence and caution as a prudent man, under similar circumstances, would exercise in connection with the management of his own estate. [….A] surcharge may be imposed on the executor to compensate the estate for any losses incurred by the executor's lack of due care. When seeking to impose a surcharge against an executor for the mismanagement of an estate, those who seek the surcharge bear the burden of proving the executor's wrongdoing. However, where a significant discrepancy appears on the face of the record, the burden shifts to the executor to present exculpatory evidence and thereby avoid the surcharge.

*In re Est. of Geniviva*, 675 A.2d 306, 310–311 (Pa. Super. 1996) (internal citations and quotations omitted).

Whereas,

- 7 -

this Court has recognized the rule forbidding an executor from placing his own interests ahead of the interests of other beneficiaries:

> An executor is a fiduciary no less than is a trustee and, as such, primarily owes a duty of loyalty to a beneficiary of his trust. Executors, as well as other fiduciaries, are under an obligation to make full disclosure to beneficiaries respecting their rights and to deal with them with utmost fairness.

The Supreme Court has elaborated accordingly that:

> He that is entrusted with the interest of others, cannot be allowed to make the business an object of interest to himself; because from the frailty of nature, one who has the power will be too readily seized with the inclination to use the opportunity for serving his own interest at the expense of others for whom he is entrusted.

Thus, the rule forbidding self-dealing serves both to shield the estate and its beneficiaries and ensures the propriety of the executor's conduct. Consequently, the rule is inflexible, without regard to the consideration paid, or the honesty of intent.

*In re Est. of Walter*, 191 A.3d 873, 881 (Pa. Super. 2018) (internal quotations, citations, and original brackets omitted).

"Where there is self-dealing on the part of a fiduciary, it is immaterial to the question of his liability in the premises whether he acted without fraudulent intent or whether the price received for his sale of trust property was fair and adequate." *In re Noonan's Est.*, 63 A.2d 80, 84 (Pa. 1949) (citation omitted). "[T]he situation is no different where the breach consists of the fiduciary's marked preference of a third person over the beneficiary in respect of a disposition of estate property." *Id.* "As in the case of self-dealing, such conduct constitutes a violation of the fiduciary's basic duty to the beneficiary." *Id.* (citation omitted). "In the case of an offending

- 8 -

fiduciary, if the trust property which he improperly sold is held by or for him, **the remedy is a direct setting aside of the sale** upon attack by one having standing to complain, *e.g.*, a testamentary beneficiary or *cestui que trust*." ***Id.*** (citation omitted; emphasis added).

Within the context of a prior appeal, this Court determined that Appellant's conveyance of the Pearl Street property to his wife and children for nominal consideration constituted an act of self-dealing and, thus, a breach of his duties to other beneficiaries of the estate. The orphans' court acknowledged this determination as the law of the case in the proceedings that led up to this appeal wherein the property transfer was revoked. This Court has previously explained the law of the case doctrine as follows:

> The law of the case doctrine refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter.... The various rules which make up the law of the case doctrine serve not only to promote the goal of judicial economy ... but also operate (1) to protect the settled expectations of the parties; (2) to insure uniformity of decisions; (3) to maintain consistency during the course of a single case; (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end.

> Thus, under the doctrine of the law of the case,

>> when an appellate court has considered and decided a question submitted to it upon appeal, it will not, upon a subsequent appeal on another phase of the case, reverse its previous ruling even though convinced it was erroneous. This rule has been adopted and frequently applied in our own [Commonwealth]. It is not, however, inflexible. It does not have the finality of the doctrine of *res judicata*. "The prior ruling may have been followed as the law of the case but there is a difference between such adherence and *res*

*judicata*; one directs discretion, and the other supercedes [sic] it and compels judgment. In other words, in one it is a question of power, in the other of submission." The rule of the "law of the case" is one largely of convenience and public policy, both of which are served by stability in judicial decisions, and it must be accommodated to the needs of justice by the discriminating exercise of judicial power.

***Neidert v. Charlie***, 143 A.3d 384, 390–391 (Pa. Super. 2016) (internal citations omitted).

In this case, the trial court opined:

[Appellant] maintains that the action which properly should have been taken by the court was a surcharge rather than a revocation of the transfer of title. That argument disregards the complicity of [Appellant] and his wife, to whom the property was transferred. As the Superior Court has already determined in its opinion filed on January 19, 2022, Silvia was cognizant of [Appellant's] conduct and was complicit in the illicit transfer. In such circumstances, the impropriety is not fully addressed by a surcharge; the transaction must be deemed void.

\* \* \*

The Superior Court has observed that: "[Appellant] created a substantial conflict of interest with his fiduciary duties as executor of the [e]state when he claimed the [e]state owed him $180,000.00 for taking care of his mother prior to her death. An executor has 'a duty to see that her purely private interests were not advanced at the expense of the estate.'"

\* \* \*

[Moreover, Appellant] asserts that the court erred and abused its discretion when it unjustly enriched the estate by revoking the transfer of the deed. To the extent that that complaint is again referencing forgiveness of the purported $180,000[.00] claim of [Appellant] and is asserting that such forgiveness enriched the estate but provided no *quid pro quo* to [Appellant], the contention remains unconvincing. Voiding the transaction does not necessarily preclude a reassertion of the claim during the pendency of the estate.

Trial Court Opinion, 5/31/2022, at 1-3.

- 10 -

Having already determined, in a prior appeal, that Appellant engaged in self-dealing by paying his alleged caretaking claim out of the estate and transferring the Pearl Street property to his wife and children and that this conveyance constituted a substantial conflict of interest with his fiduciary duties as executor of the estate, we discern no trial court abuse of discretion in setting aside the property sale. We are bound by the prior panel's determinations under the law of the case doctrine. Through self-dealing, Appellant's conduct constituted a violation of his basic duty as fiduciary to the beneficiaries. Therefore, as set forth at length above, the proper remedy was to set aside the property sale. Finally, we note that the orphans' court never ordered Appellant to pay a penalty as punishment for improper fiduciary conduct. Accordingly, we reject Appellant's suggestion that the court's remedy constituted a surcharge. Hence, Appellant is not entitled to relief on his first claim.

Next, Appellant argues that he "is entitled to a hearing because the action involved a surcharge action and [] Appellant never had an opportunity to be heard during a formal surcharge hearing." Appellant's Brief at 13. Appellant claims that the trial court based its decision "solely []upon a false assertion that the settlement claim by [] Appellant had already been decided previously" when he was removed as executor and that the successor administrator "presented no other evidence[.]" *Id.* at 15. Appellant claims that he was entitled to "a formal surcharge hearing" and, as a result, the trial

court "erred as a matter of law and fact because it abused its discretion when it issued an order revoking the conveyance of real property and didn't give [] Appellant an opportunity to be heard." *Id.* at 15-16.

We adhere to the following standards:

> A question regarding whether a due process violation occurred is a question of law for which the standard of review is *de novo* and the scope of review is plenary. Due process requires that the litigants receive notice of the issues before the court and an opportunity to present their case in relation to those issues. It is well settled that procedural due process requires, at its core, adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case.

*Int. of S.L.*, 202 A.3d 723, 729 (Pa. Super. 2019) (internal citations and quotations omitted"). "Due process requires only that a party be provided an opportunity to be heard; it does not confer an absolute right to be heard." *Captline v. County of Allegheny*, 718 A.2d 273, 275 (Pa. 1998) (citations omitted).

Appellant's second claim presumes that the revocation of the transfer of the Pearl Street property constituted a surcharge action and that, within the context of such a proceeding, he was entitled to, but denied, certain procedural rights such as notice, opportunity to be heard, and the chance to present evidence. As set forth above, we have rejected Appellant's suggestion that a surcharge was imposed or that surcharge was the appropriate remedy for the improper sale of the property at issue. Furthermore, as the trial court properly observed, "[o]n March 1, 2022, [Appellant] was given the opportunity

to present testimony regarding his claim and conduct as [e]xecutor" but, instead, "invoke[ed] his right against self-incrimination under the Fifth and Fourteen Amendments to the Constitution of the United States, declin[ing] to testify regarding either matter." Trial Court Opinion, 5/31/2022, at 6. Further, the orphans' court opined that Appellant's argument "that he had been denied an opportunity to be heard [] would be seen to be in conflict with his filing of a thirty-eight[-]page response, inclusive of exhibits, in advance of the March 1[, 2022] hearing and his subsequent assertion of a right not to testify at the hearing." *Id.* Upon review, we agree with the trial court's assessment. Appellant was given the opportunity to be heard at the March 1, 2022 hearing, which was convened on the successor administrator's petition to revoke the conveyance of the Pearl Street property. There is no dispute that Appellant received notice of the issues before the court, the proposed revocation of the property sale, and was given an opportunity to present his case in relation to those issues but, ultimately, he invoked his right not to testify and did not avail himself of the opportunity to contest the administrator's contentions. *See* N.T., 3/1/2022, at 20. Accordingly, Appellant is not entitled to relief.[4]

Order affirmed.

---

[4] We express no opinion regarding the merits of Appellant's claim against the estate for caretaking services.

- 13 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  1/27/2023