J-S42019-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: THE ESTATE OF ANGELA DIMATTEO | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: SILVIA DIMATTEO, ENRICO DIMATTEO, AND ROSSELLA DIMATTEO | : | |
| | : | |
| | : | |
| | : | No. 363 WDA 2022 |

Appeal from the Order Entered March 2, 2022
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  No. 02-18-6412

BEFORE:   BOWES, J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.:                **FILED: FEBRUARY 22, 2023**

Appellants, Silvia DiMatteo, Enrico DiMatteo, and Rosella DiMatteo (Appellants), appeal from the order entered on March 2, 2022, setting aside a conveyance of real property from the estate of Angela DiMatteo to Appellants, following the prior removal of Casimiro DiMatteo (Casimiro) as executor of the estate.[1]  We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1]  Casimiro and Silvia DiMatteo are married; Enrico and Rosella DiMatteo are their adult children.  Angela DiMatteo was Casimiro's mother.   Casimiro, in his own right, separately appealed the March 2, 2022 order voiding the sale of the property at issue herein.  That appeal is docketed in this Court at 362 WDA 2022.  The trial court issued a separate opinion pursuant to Pa.R.A.P. 1925(a) on May 31, 2022, that specifically addressed the issues pertaining to Casimiro.  On September 12, 2022, this Court received correspondence from Casimiro's attorney stating that Casimiro "joins in the brief and argument presented by Appellants" but he would "not be filing a brief or participating in oral arguments."  Correspondence, 9/11/2022, at *1.

We briefly set forth the facts and procedural history of this case as follows. On September 25, 2013, Angela DiMatteo executed a last will and testament naming Casimiro as executor of her estate. The will further stated that, should Casimiro be unable to serve as executor, then his wife, Silvia Collucio DiMatteo, should serve in his stead. On October 5, 2018, Angela DiMatteo died. On October 18, 2018, letters testamentary were issued to Casimiro. On December 12, 2019, Annina Radakovich DiMatteo, Angela DiMatteo's daughter and one of the other heirs to the estate, filed a petition to compel Casimiro to file an accounting of the estate. Thereafter,

> [a]lmost a year later, during a conference with the orphans' court, the parties reached a consent order, dated January 20, 2021, and recorded January 25, 2021. In relevant part, it required that Bodnar Real Estate perform an appraisal of the real estate at 412 Pearl Street, Pittsburgh, Pennsylvania ("Pearl Street property") within 30 days. Additionally, Casimiro was to file state and federal fiduciary tax returns within 30 days after he received the last 1099 for estate income, receipt of which was to be provided to all counsel. Casimiro was then to file a formal first and final account within 30 days after the tax returns were filed.
>
> On February 12, 2021, before [the arrival of Casimiro's deadline] to comply with [the consent] order, Annina filed an emergency petition to remove [Appellant] as executor. Annina claimed that Casimiro failed to adhere to the terms of the consent order, filed a $180,000[.00] claim with the estate for caretaking services, transferred the Pearl Street property from the estate to his wife and children for one dollar, and filed a claim for an executor's fee. Additionally, as a result of Casimiro's actions and failure to adhere to legal advice, his counsel sought permission to withdraw. Casimiro filed a *pro se* response to Annina's petition.
>
> On February 19, 2021, the orphans' court granted counsel's request. Following a hearing on Annina's emergency petition, the court also revoked the letters testamentary issued to Casimiro and directed that Warner Mariani, Esquire, be appointed administrator

of the Estate of Angela DiMatteo upon proper application to the Wills Division of the Allegheny County Department of Court Records.

Notably, the orphans' court bypassed the substitute executrix named in Ms. DiMatteo's Will, Casimiro's wife Silvia, because of her participation in [the transfer of] property from the estate to herself and [her] children.

*In re Est. of DiMatteo*, 272 A.3d 486, at *1-2 (Pa. Super. 2022) (unpublished memorandum).

Casimiro challenged his removal as executor in a prior appeal to this Court. Ultimately, we affirmed Casimiro's removal as executor and approved the appointment of Attorney Mariani as successor. *See id.* More specifically, and important to the current appeal, this Court determined:

Shortly after issuance of the consent order, Casimiro sent a family settlement agreement to the other beneficiaries proposing to distribute the remaining Estate assets, apparently to resolve [the distribution of the estate] informally. He filed a status report indicating that the administration of the Estate was complete. He did this despite being directed by the orphans' court to obtain an appraisal of the Pearl Street property and to file a formal account.

Additionally, Casimiro created a substantial conflict of interest with his fiduciary duties as executor of the Estate, when he claimed the Estate owed him $180,000[.00] for taking care of his mother prior to her death.

*                *                *

Furthermore, Casimiro engaged in self-dealing by paying his caretaking claim out of the Estate and transferring the Pearl Street property to his wife and children. We [] therefore conclude[d] that the trial court did not abuse its discretion in removing Casimiro as executor of the Estate.

*                *                *

[Moreover], the orphans' court explained that Silvia clearly was aligned with her husband by advancing his position that he was

- 3 -

> entitled to payment for caretaker services and accepting the transfer of the property. Casimiro had conveyed a valuable parcel of real estate from the estate to his wife and children for the nominal consideration of one dollar. Silvia's participation in that conveyance severely compromised her fitness to serve as a successor executrix.

*Id.* at *3 (quotations, case citations, and original brackets omitted). No further appeal resulted.

On December 21, 2022, Attorney Mariani, as successor executor, filed a petition to revoke the conveyance of the Pearl Street property to Appellants. On March 1, 2022, the trial court held a hearing on the petition to revoke. At that hearing, Casimiro appeared but did not testify and, instead, invoked his right against self-incrimination under the Fifth Amendment of the United States Constitution. Appellants also attended the hearing, but did not testify or otherwise present evidence. On March 2, 2022, the trial court entered an order voiding the sale of the Pearl Street property to Appellants. This appeal resulted.[2]

On appeal, Appellants raise the following issues for our review:

_____

[2] Appellants filed a notice of appeal on March 31, 2022. On April 7, 2022, the trial court directed Appellants to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellants complied timely on April 25, 2022. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on May 31, 2022.

Finally, we note that upon review of the certified record, the trial court subsequently approved the sale of the Pearl Street property to an independent third-party by order entered on May 18, 2022. Neither Casimirio nor Appellants appealed that decision.

I.    Whether the trial court's issuance of an order revoking conveyance of real property by the former executor of the estate constituted a surcharge action[?]

II.   If a surcharge action, whether the trial court erred as a matter of law and fact and abused its discretion in issuing the order revoking conveyance of real property without giving any interested party an opportunity to be heard and without taking any evidence[?]

III.  If not a surcharge action, whether the trial court erred as a matter of law and fact and abused its discretion in issuing the order revoking conveyance of real property without giving any interested party an opportunity to be heard and without taking any evidence[?]

IV.   Whether the order revoking conveyance of real property by the former executor of the estate was a denial of the claim filed against the estate[?]

V.    If the order was a denial of the claim, whether the trial court erred as a matter of law and fact and abused its discretion in issuing an order revoking conveyance of real property by the former executor of the estate, thus denying the claim filed against the estate that the conveyance satisfied, without giving any interested party an opportunity to be heard and without taking any evidence[?]

Appellants' Brief at 3-4 (complete capitalization omitted).[3]

In their first issue presented, Appellants argue that the trial court's revocation of the conveyance of real property by the former executor, Casimiro, constituted a surcharge action. *Id.* at 8-9. More specifically, Appellants suggest that "when the executor of an estate fails to fulfill his

---

[3] Initially, we note that Appellants concede that issues four and five as set forth above are both moot. **See** Appellants' Brief at 8 and 14-15. As such, we need not address the merits of those claims.

fiduciary duty of care, the court may impose a surcharge against him." ***Id.*** at 9 (case citations omitted). Appellants claim that, because the transfer of the Pearl Street property constituted a "settlement of a claim made partially by" Casimiro for alleged services rendered to the decedent, the court's revocation of the sale was a surcharge. ***Id.***

> We adhere to the following standard of review:
>
> When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and [whether] the trial court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, this Court will not reverse the trial court's credibility determinations absent an abuse of discretion.

***In re Est. of Aiello***, 993 A.2d 283, 287 (Pa. Super. 2010) (citations omitted).

Primarily, the trial court noted that Appellants stated, in their concise statement pursuant to Pa.R.A.P. 1925(b), "that the first two matters complained of [were] only pertinent if the order of court that revoked the conveyance of real estate between the estate and [Appellants] constituted a surcharge action" but "[b]ecause that order did not involve a surcharge[,]" the trial court did not address those issues. Trial Court Opinion, 5/31/2022, at 3-4.

Our Supreme Court has explained that "the power to set aside" an estate administrator's sale of real property "is delimited by Section 3360" of the Probate, Estates and Fiduciaries Code. ***Est. of Bosico***, 412 A.2d 505, 506 (Pa. 1980), *citing* 20 Pa.C.S.A. § 3360. More specifically, under Section 3360:

(a) Inadequacy of consideration or better offer.--When a personal representative shall make a contract not requiring approval of court, or when the court shall approve a contract of a personal representative requiring approval of the court, neither inadequacy of consideration, nor the receipt of an offer to deal on other terms shall, except as otherwise agreed by the parties, relieve the personal representative of the obligation to perform his contract or shall constitute ground for any court to set aside the contract, or to refuse to enforce it by specific performance or otherwise: Provided, That **this subsection shall not affect or change the inherent right of the court to set aside a contract for fraud, accident or mistake. Nothing in this subsection shall affect the liability of a personal representative for surcharge on the ground of negligence or bad faith in making a contract.**

20 Pa.C.S.A. § 3360(a) (emphasis added). "[A]bsent a showing of fraud, if an administrator fails to comply with his fiduciary duties in a manner evidencing neglect or bad faith, the remedy of surcharge is available under Section 3360." *Est. of Bosico*, 412 A.2d at 507. "The intent of the legislature in enacting this statute was to prevent courts from [assuming] the position of [a] super executor/administrator, and to leave essentially private transactions in the hands of the individuals involved." *In re Est. of Hughes*, 538 A.2d 470, 472 (Pa. 1988) (citation omitted).

This Court has further explained:

An executor, as a fiduciary of the estate, is required to use such common skill, prudence and caution as a prudent man, under similar circumstances, would exercise in connection with the management of his own estate. [....A] surcharge may be imposed on the executor to compensate the estate for any losses incurred by the executor's lack of due care. When seeking to impose a surcharge against an executor for the mismanagement of an estate, those who seek the surcharge bear the burden of proving the executor's wrongdoing. However, where a significant discrepancy appears on the face of the record, the burden shifts

to the executor to present exculpatory evidence and thereby avoid the surcharge.

***In re Est. of Geniviva***, 675 A.2d 306, 310–311 (Pa. Super. 1996) (internal citations and quotations omitted).

Whereas,

this Court has recognized the rule forbidding an executor from placing his own interests ahead of the interests of other beneficiaries:

An executor is a fiduciary no less than is a trustee and, as such, primarily owes a duty of loyalty to a beneficiary of his trust. Executors, as well as other fiduciaries, are under an obligation to make full disclosure to beneficiaries respecting their rights and to deal with them with utmost fairness.

The Supreme Court has elaborated accordingly that:

He that is entrusted with the interest of others, cannot be allowed to make the business an object of interest to himself; because from the frailty of nature, one who has the power will be too readily seized with the inclination to use the opportunity for serving his own interest at the expense of others for whom he is entrusted.

Thus, the rule forbidding self-dealing serves both to shield the estate and its beneficiaries and ensures the propriety of the executor's conduct. Consequently, the rule is inflexible, without regard to the consideration paid, or the honesty of intent.

***In re Est. of Walter***, 191 A.3d 873, 881 (Pa. Super. 2018) (internal quotations, citations, and original brackets omitted).

"Where there is self-dealing on the part of a fiduciary, it is immaterial to the question of his liability in the premises whether he acted without fraudulent intent or whether the price received for his sale of trust property was fair and adequate." ***In re Noonan's Est.***, 63 A.2d 80, 84 (Pa. 1949) (citation omitted). "[T]he situation is no different where the breach consists

- 8 -

of the fiduciary's marked preference of a third person over the beneficiary in respect of a disposition of estate property." *Id.* "As in the case of self-dealing, such conduct constitutes a violation of the fiduciary's basic duty to the beneficiary." *Id.* (citation omitted). "In the case of an offending fiduciary, if the trust property which he improperly sold is held by or for him, **the remedy is a direct setting aside of the sale** upon attack by one having standing to complain, *e.g.*, a testamentary beneficiary or *cestui que trust*." *Id.* (citation omitted; emphasis added).

Within the context of a prior appeal, this Court determined that Casimiro's conveyance of the Pearl Street property to Appellants for nominal consideration constituted an act of self-dealing and, thus, a breach of his duties to other beneficiaries of the estate. This prior determination constitutes the law of the case, which this Court has previously explained as follows:

> The law of the case doctrine refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter.... The various rules which make up the law of the case doctrine serve not only to promote the goal of judicial economy ... but also operate (1) to protect the settled expectations of the parties; (2) to insure uniformity of decisions; (3) to maintain consistency during the course of a single case; (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end.
>
> Thus, under the doctrine of the law of the case,
>
>> when an appellate court has considered and decided a question submitted to it upon appeal, it will not, upon a subsequent appeal on another phase of the case, reverse its previous ruling even though convinced it was erroneous. This rule has been adopted and frequently applied in our

own [Commonwealth]. It is not, however, inflexible. It does not have the finality of the doctrine of *res judicata*. "The prior ruling may have been followed as the law of the case but there is a difference between such adherence and *res judicata*; one directs discretion, and the other supercedes [sic] it and compels judgment. In other words, in one it is a question of power, in the other of submission." The rule of the "law of the case" is one largely of convenience and public policy, both of which are served by stability in judicial decisions, and it must be accommodated to the needs of justice by the discriminating exercise of judicial power.

*Neidert v. Charlie*, 143 A.3d 384, 390–391 (Pa. Super. 2016) (internal citations omitted).

Here, the trial court first recognized that "Appellants fail to consider that the matter of Casimiro's conduct as an executor including, specifically, the transfer [of] the Pearl Street property to [Appellants] for *de minimus* consideration has already been addressed by" this Court in our January 2022 decision wherein a prior panel "concluded that Casimiro's conduct constituted self-dealing which warranted his removal from the position as executor." Trial Court Opinion, 5/31/2022, at 4. It further opined:

In the matter at hand, Casimiro had transferred the property to [Appellants] for token consideration, engaging in a degree of self-dealing that severely compromised estate assets. Indeed, even if it were determined that Casimiro's conduct had not been prompted by self-interest but had merely been an occasion of misapprehending the duties and functions of an executor, the transaction was so extraordinarily inconsistent with the proper function of an executor and competent administration of estate assets that neither Casimiro nor Silvia could be entrusted to administer the estate in forthright, competent fashion.

*Id.* at 4-5.

Having already determined, in a prior appeal, that Casimiro engaged in self-dealing by paying his alleged caretaking claim out of the estate and transferring the Pearl Street property to Appellants and that this conveyance constituted a substantial conflict of interest with his fiduciary duties as executor of the estate, we discern no trial court abuse of discretion in setting aside the property sale. We are bound by the prior panel's determination under the law of the case doctrine. Through self-dealing, Casimiro's conduct constituted a violation of his basic duty as fiduciary to the beneficiaries. Therefore, as set forth at length above, the proper remedy was to set aside the property sale. Moreover, we note that the orphans' court never ordered Casimiro to pay a penalty as punishment for improper fiduciary conduct. Accordingly, we reject Appellants' suggestion that the court's remedy constituted a surcharge. Hence, Appellants are not entitled to relief on their first claim.

Next, in their second and third issues presented on appeal, which we examine together, Appellants argue that the trial court erred as a matter of law or abused its discretion in revoking the conveyance of real property without giving any interested party an opportunity to be heard and without taking any evidence. Appellants' Brief at 10. Appellants complain that "before the court can impose a surcharge, it must give the executor an opportunity to be heard." *Id.* (case citation omitted). Appellants maintain that the trial court could not determine whether the parties met their burdens

of proof without gathering and weighing evidence at a hearing and the arguments of counsel cannot be used as a substitute. *Id.* at 11-12. Appellants suggest that the trial court's "rationale appears to be that any action of the [t]rial [c]ourt is justified when an executor is removed." *Id.* at 13-14. Appellants concede that "the conveyance of the [Pearl Street property] look[ed] like text-book self-dealing" by Casimiro, but they argue that proffered evidence established that he was acting to benefit the estate while executor. *Id.* at 13.

We adhere to the following standards:

A question regarding whether a due process violation occurred is a question of law for which the standard of review is *de novo* and the scope of review is plenary. Due process requires that the litigants receive notice of the issues before the court and an opportunity to present their case in relation to those issues. It is well settled that procedural due process requires, at its core, adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case.

*Int. of S.L.*, 202 A.3d 723, 729 (Pa. Super. 2019) (internal citations and quotations omitted"). "Due process requires only that a party be provided an opportunity to be heard; it does not confer an absolute right to be heard." *Captline v. County of Allegheny*, 718 A.2d 273, 275 (Pa. 1998) (citations omitted).

Appellants' claims presume that the revocation of the transfer of the Pearl Street property constituted a surcharge action and that, within the context of such a proceeding, they were entitled to, but denied, certain

procedural rights such as notice, opportunity to be heard, and the chance to present evidence. As set forth above, we have rejected Appellants' suggestion that a surcharge was imposed or that surcharge was the appropriate remedy for the improper sale of the property at issue. Furthermore, as the trial court properly observed, "[o]n March 1, 2022, Casimiro was given the opportunity to present testimony regarding his claim and conduct as [e]xecutor" but, instead, "invoke[ed] his right against self-incrimination under the Fifth and Fourteen Amendments to the Constitution of the United States, declin[ing] to testify regarding either matter." Trial Court Opinion, 5/31/2022, at 6. Further, the orphans' court rejected the argument "that [Casimiro] had been denied an opportunity to be heard" since such a contention conflicted "with his filing of a thirty-eight[-]page response, inclusive of exhibits, in advance of the March 1[, 2022] hearing and his subsequent assertion of a right not to testify at the hearing." *Id.* Upon review, we agree with the trial court's assessment. Casimiro was given the opportunity to be heard at the March 1, 2022 hearing, which was convened on the successor administrator's petition to revoke the conveyance of the Pearl Street property. There is no dispute that Casimiro received notice of the issues before the court (*i.e.* the proposed revocation of the property sale) and was given an opportunity to present his case in relation to those issues but, ultimately, he invoked his right not to testify and did not avail himself of the opportunity to contest the administrator's contentions. *See* N.T., 3/1/2022, at 20. Furthermore,

Appellants were present, and represented by counsel, at the March 1, 2022 hearing on the proposed revocation. **See id.** at 17. Counsel for Appellants argued that surcharge was the appropriate remedy and requested a separate surcharge hearing. **Id.** at 7. As explained at length above, however, we have already rejected Appellants' argument regarding surcharge. Furthermore, upon further review of the certified record, Appellants did not testify, present evidence, or otherwise complain that they were denied due process at the March 1, 2022 hearing on the proposed revocation. Accordingly, for all of the foregoing reasons, Appellants are not entitled to relief on their second and third appellate issues.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/22/2023