2018 PA Super 179

| | | |
|---|---|---|
| IN RE: ESTATE OF CARRYL L. WALTER, DECEASED | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: LYNN M. WALTER | : : : : : : : | |
| | : | No. 844 MDA 2017 |

Appeal from the Order Entered April 27, 2017
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s): 21-2011-00593

BEFORE: PANELLA, J., OLSON, J., and STEVENS*, P.J.E.

OPINION BY STEVENS, P.J.E.: **FILED JUNE 22, 2018**

Appellant, Lynn M. Walter, former Executrix for the estate of Carryl Walter ("Decedent"), appeals from the order entered by the Court of Common Pleas of Cumberland County sustaining objections to her accounting upon a finding of improper distributions and misappropriation of funds. We affirm.

The Orphans' Court sets forth the relevant procedural history and facts as follows:

PROCEDURAL HISTORY

A Decree of Probate and a Grant of Letters Testamentary were entered on May 19, 2011, in the Cumberland County Office of Register of Wills and Clerk of the Orphans' Court for [Decedent's] Will executed on November 12, 2010. [Three years later, after learning of the Estate, the Commonwealth, acting as *parens patriae* because the will named charities as beneficiaries, filed a petition to void gifts allegedly made pursuant to the Will.] A Citation was issued on May 6, 2014, based on [the Commonwealth's petition]. The Citation was amended on March 3, 2015, to extend the issuance to the Estate's attorney and the

_____

* Former Justice specially assigned to the Superior Court.

Executrix of the Estate, [Appellant], which further alleged misappropriation of funds.

In June 2015, a material conflict was found to exist, and the Appellant was removed, followed by the Grant of Letters of Administration [to Appellee] d/b/n/c/t/a in July 2015. Objections to the Executrix's account were filed in September 2016, and discovery was extended through the calendar year 2016. Thereafter, a hearing was held on the Objections on March 30, 2017, and a decision entered on April 27, 2017. An appeal was filed on April 30, 2017, to Superior Court. . . .

The [Orphans' Court's decision] sustained seven (7) Objections to the former Executrix's Accounting as improperly distributed with specific notation that no finding was made as to proper distribution, malpractice on part of the former Estate's attorney, error of the bank, or set-offs for any successful claim by former Executrix to the IOLTA fund. . . .

                            FACTS

This case arises out of the embezzlement of Estate funds and conversion of its assets by the now-former Estate attorney (Attorney), while under the fiduciary eyes of the now-former Executrix [Appellant]. Carryl Walter (Decedent) died testate on May 11, 2011; Decedent left major assets of cash in Members 1st Credit Union (MFFCU), a gold and silver coin collection in a safe deposit box, and a mobile home. The salient facts from the proceeding are:

1) Executrix is the ex-daughter-in-law of Decedent and, among other accounting positions, a former payroll supervisor with the Harrisburg School District.

2) Attorney was Karl Rominger, Esq.

3) Decedent had various accounts with MFFCU, specifically a money market account, checking account, savings account, and certificates of deposit accounts.

4) Executrix was orally advised on May 25, 2011, by a representative of MFFCU that the checking, savings, and money market accounts were "benefacted" to her, and together they transferred the balances of those accounts into an individual account opened in the Executrix's individual name.

5) In the Will, specific bequests were given to Executrix, $50,000.00; to Executrix's daughter (Decedent's granddaughter), $20,000; to Executrix's son (Decedent's grandson), $20,000.00; *inter alia*, with a specific gift of the coin collection to the National Military Family Association.

6) The coin collection was removed from a safe deposit box and sold to a dealer in New Cumberland, PA., who had been found by Executrix, and together Executrix and Attorney took the coins to that dealer, who gave Executrix a check for $92,314.00

7) Executrix set up a separate Estate bank account for the coin proceeds to send to the charity per good accounting practice, but instead the funds were transferred to Attorney's IOLTA account allegedly at the charity's request, and Attorney subsequently embezzled those funds from the IOLTA account.

8) Executrix was told by Attorney [that] the charity[] [had sent an] email request[ing] cash in *lieu* of coin delivery[,] but [she] never saw any documentation [to that effect].

9) Decedent had a mobile home that Executrix tried to sell on her own – estimated value of $49,900.00.

10) The best offer for the mobile home was $35,000.00; however, no sale occurred due to potential buyer's financial issues.

11) The mobile home was "sold" *via* title transfer to Executrix's daughter in *lieu* of her receipt of a $20,000.00 specific bequest.

12) The only beneficiary designation form signed by Decedent, on or about December 29, 2009, as shown in MFFCU computer's system for all accounts was for a certificate of deposit, denominated as Share 41, which at Decedent's death had matured on September 25, 2010, and that account left empty [sic].

13) At one point in time, Share 41 had a $50,000.00 balance with Executrix individually listed as beneficiary.

14) There are no paper beneficiary forms (or electronic copies thereof) that support MFFCU's computer system review that designates Executrix as beneficiary for any other accounts.

15) Inexplicably, overdraft fees were charged three (3) times to the Estate's bank account within the first year.

16) Attorney embezzled various funds from the Estate, including directly from the Estate's bank savings accounts, totaling $32,623.36[.] Attorney has been permitted by Executrix to be the lone signatory [of such accounts].

17) Executrix paid herself and Attorney fees, each totaling $21,417.12, which occurred in two payments—August 2011 and January 2012.

Orphans' Court Opinion, filed 9/29/17 at 1-5.

In Appellant's Statement of Questions Presented, she raises the following issues for our review:

**I. WHETHER THE LOWER COURT ABUSED ITS DISCRETION WHEN IT SUSTAINED THE OBJECTIONS OF THE ADMINISTRATOR RELATED TO APPELLANT'S RELIANCE ON THE ADVICE OF LEGAL COUNSEL?**

**II. WHETHER THE LOWER COURT ABUSED ITS DISCRETION WHEN IT CONCLUDED THAT THE OBJECTOR MET ITS BURDEN OF PROOF NECESSARY TO FIND THAT APPELLANT HAD BREACHED HER FIDUCIARY DUTY AND THEN SUBSEQUENTLY SURCHARGED APPELLANT?**

**III. WHETHER THE LOWER COURT ABUSED ITS DISCRETION WHEN IT CONCLUDED THAT THE OBJECTOR MET ITS BURDEN OF PROOF NECESSARY TO FIND THAT THREE MEMBERS 1ST ACCOUNTS MARKED AS "IN TRUST FOR LYNN WALTER" WERE ESTATE ASSETS?**

Appellant's brief, at 5.

> Our standard of review of the findings of an orphans' court is deferential.
>
> > When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.
>
> ***In re Estate of Geniviva***, [675 A.2d 306, 310 (Pa.Super. 1996)] (internal citations omitted). However, "we are not constrained to give the same deference to any resulting legal conclusions." ***Id***. "[W]here the rules of law on which the [court] relied are palpably wrong or clearly inapplicable, we will reverse the [court's] decree."

> ***Horner v. Horner***, 719 A.2d 1101, 1103 (Pa.Super. 1998) (discussing standard of review for courts of equity).

***In re Estate of Harrison***, 745 A.2d 676, 678–79 (Pa.Super. 2000).

Appellant's first two issues coalesce to contend the orphans' court's decision to impose against her a surcharge of $391,868.45 unduly punishes her for crimes committed by Attorney, on whose legal expertise she relied as a layperson. Such reliance on Attorney's advice, she maintains, provided her with a good faith defense to a surcharge, as her decisions were reasonable and prudent under the totality of circumstances in accordance with Pennsylvania decisional law. ***See*** *infra*.

Both Appellee[1] and the Commonwealth support the orphans' court's rejection of Appellant's good faith defense, as they argue a prudent person in Appellant's fiduciary position and with her professional bookkeeping experience and knowledge would have maintained close oversight of all deposits and withdrawals from estate accounts. Instead, Appellant allowed Attorney to transfer estate funds into two bank accounts over which Appellant either could not or chose not to oversee and to which Attorney enjoyed access. Even after receiving notification of three overdraft charges on the accounts, Appellant still did not investigate account transactions or intervene to protect estate funds. Such complete deference to Attorney's advice, which continued with respect to the management of other estate assets, was wholly

_____

[1] Appellee is Nicholas Peters, present Administrator d/b/n/c/t/a of Decedent's Estate.

- 6 -

incompatible with how a prudent person charged with a fiduciary duty under such circumstances would have acted, Appellee and the Commonwealth posit.

> Our Supreme Court has recognized that "[w]here a fiduciary acts upon the advice of counsel, such fact is 'a factor to be considered in determining good faith, but is not a blanket of immunity in all circumstances.'" ***In re Lohm's Estate***, 440 Pa. 268, 269 A.2d 451, 455 (1970).
>
> > There are two aspects to this 'factor' which must be weighed in deciding whether the fiduciary may defend against a surcharge attempt on the basis of reliance upon the advice of counsel. The initial choice of counsel must have been prudent under all the circumstances then existing, and the subsequent decision to rely upon this counsel must also have been a reasonably wise and prudent choice.
>
> ***Id***.

***In re Smith***, 890 A.2d 1082, 1089 (Pa.Super. 2006).

In advancing her position, Appellant initially argues the orphan's court failed to give appropriate weight to the undisputed fact that her choice of Attorney was prudent under all circumstances then existing. Neither the Commonwealth nor Appellee disputes that the appointment of Attorney, which was consistent with the directive of Decedent's Will, was reasonable. They do contest, however, Appellant's suggestion that this factor carries enough weight to offset her subsequent pattern of inattention to the depletion of estate assets over the course of years.

Our review of the record reveals the orphans' court effectively gave due regard to the governing standard of review expressed in ***In re Lohm's Estate*** and again in ***In re Smith***. Specifically, the court acknowledged a prudent

person in Appellant's position may not have discovered all Attorney's actions that gave rise to the objections filed in this matter—Attorney's avarice and gambling addiction were unforeseeable causes of early estate dissipation, the court opined. Attorney's protracted pattern of embezzlement, however, was discoverable with the exercise of due diligence, such that Appellant was not discharged from her fiduciary accountabilities to protect and preserve the estate in this respect. *See* Orphans' Court Opinion, at 6. We agree and, therefore, discern no error with the court's application of law to the present matter.

We also find the record belies Appellant's contention that the weight of the evidence tipped in favor of finding that she made good faith efforts to act with prudence and wisdom in administering the estate only to be derailed by Attorney's skillful deception. Indeed, the instances of Appellant's administrative breakdowns, which ranged from recurring failures of due diligence to benefitting herself to the detriment of other beneficiaries, were many.

"One's appointment as an estate executor confers an honor and trust and, commensurately, the duty to oversee the administration with competence so as to avoid compromising the probity of the estate. At a minimum, this requires one to investigate estate transactions to determine their soundness prior to approval." *Matter of Estate of Frey*, 693 A.2d 1349, 1353 (Pa. Super. Ct. 1997).

Rather than investigate three separate bank notices advising overdraft fees had been assessed on checking and savings accounts holding estate assets, Appellant simply relied upon Attorney's unsubstantiated assurances that the notices were of no concern, which enabled Attorney to steal from the estate for years. A prudent executrix with Appellant's experience as a professional bookkeeper would have investigated and ascertained the reasons for the serial overdraft notices. *See in re Lohm's Estate*, 269 A.2d at 455 (finding executor's reliance on tax attorney's advice, which led to late filing, not reasonable where prudent person in handling own affairs would ascertain tax filing due date). No error attends the court's conclusion that a surcharge should reflect such losses.

Appellant's failure to bequeath Decedent's valuable gold and silver coin collection to the National Military Family Association, as the Will specifically directed, was another example of Appellant's unreasonable administration of the estate. Instead of carrying out the Will's bequest in this regard, Appellant opted to believe Attorney's false claim that the charity preferred cash instead of the coins, and she agreed to convert the estate's interest in the coins to $92,314.00 cash. She then allowed Appellant to place the funds in his IOLTA account on the pretense that he would distribute them to the charity from said account.

Never did Appellant verify with the charity that it had made this request or investigate if it was within her powers to deviate from the Will's specific bequest. Nor, for that matter, did she ask Attorney to provide documentary

proof that the charity received all income from the coin sale. Instead, Appellant uncritically agreed with Attorney's plan to liquidate a unique and valuable estate asset and place the cash into his IOLTA account, over which she would have no supervisory powers. Clearly, this was another in a series of unreasonable and imprudent decisions inconsistent with Appellant's fiduciary duties to the estate and its intended beneficiaries.

Additionally, this Court has recognized the rule forbidding an executor from placing his own interests ahead of the interests of other beneficiaries:

> "An executor is a fiduciary no less than is a trustee and, as such, primarily owes a duty of loyalty to a beneficiary of his trust." **In re Noonan's Estate**, 361 Pa. 26, 30, 63 A.2d 80, 82 (1949). "Executors, as well as other fiduciaries, are under an obligation to make full disclosure to beneficiaries respecting their rights and to deal with them with utmost fairness." **Id**. at 29, 63 A.2d at 82. The Supreme Court has elaborated accordingly that:
>
>> He that is entrusted with the interest of others, cannot be allowed to make the business an object of interest to himself; because from the frailty of nature, one who has the power[ ] will be too readily seized with the inclination to use the opportunity for serving his own interest at the expense of others for whom he is entrusted.
>
> **Id**. at 31, 63 A.2d at 83 (citation omitted) (quoting **Beeson v. Beeson**, 9 Pa. 279, 284 (1848)). Thus, the rule forbidding self-dealing serves both to shield the estate and its beneficiaries and ensures the propriety of the executor's conduct. **Id**. at 32-33, 63 A.2d at 84. Consequently, "the rule is inflexible, without regard to the consideration paid, or the honesty of intent." **Id**.

**In re Estate of Harrison**, at 679 (citing **Eagen v. Jackson**, 855 F.Supp. 765, 779 (1994) (holding it is unnecessary to show fiduciary acted, *inter alia*, in bad faith; "fiduciary is punished for allowing himself to be placed in a

position of conflicting interests in order to discourage such conduct in the future.").

Appellant's willingness to administer and distribute estate accounts in patently self-serving ways without either demanding documentary support for such actions or notifying beneficiaries and the court of such highly consequential developments placed Appellant's interests in conflict with the interests of the beneficiaries she was entrusted to serve. Chief among Appellant's actions in this regard was her willingness to accept the estate's several MFFCU bank accounts totaling $205,271.33 as her own, based on nothing more than a MFFCU employee's mistaken belief that Appellant was the sole beneficiary for all accounts.

Appellant knew Decedent's Will bequested just $50,000 to her as one of many beneficiaries, and she admitted she was "flabbergasted" at the surprising news offered by the MFFCU employee. Yet, she never asked to see the documentary support for this unexpected development nor did she inquire further with MFFCU records custodians or officers in an effort to safeguard the interests of all beneficiaries. Instead, despite realizing that over $205,000 of estate assets was no longer available to other designated beneficiaries, Appellant kept this information to herself and Attorney. As noted, above, Appellant would eventually spend the entire amount.

On this point, the orphans' court opines:

> The [Payable On Demand] beneficiary designations on the MFFCU accounts are not supported by the documentation. It is axiomatic to say that no designation or change of beneficiary is effective

unless it is completed on the form used by the bank in the manner prescribed by the bank. Executrix was "flabbergasted" to learn that all that money was given to her; it appeared too good to be true, and it was. At the expense of the estate, Executrix took the representations of bank personnel that she individually was entitled to the money, without investigation, and which was and is today without documentary support—a statement, a receipt, an invoice, or, in this case, a designation form—in order to specifically account for the disbursement. Executrix had this basic knowledge but failed to use it. In the vernacular that Executrix might more readily understand in her professional role, she would not have given out a paycheck to someone who had not produced a stamped time card or signed pay sheet. Executrix should not have so readily accepted the monies without clear, precise, and direct evidence.

Orphans' Court Opinion, at 7-8.

Appellant criticizes the orphans' court's findings as inconsistent with evidence of record showing Decedent signed a Designation of Beneficiary Form for a certificate of deposit in Appellant's name, she claims. Specifically, Appellant argues: "This form documented [Decedent's] desire to benefit [Appellant]. There are also account statements for the Accounts produced by [MFFCU] that show [Appellant] as the beneficiary of the Accounts." Appellant's brief, at 39.

While Appellee and the Commonwealth do not dispute that the record reflects Decedent's desire to benefit Appellant to some degree, they submit Decedent signed but one Designation of Beneficiary Form in Appellant's name corresponding with a single account (Share 41) totaling $50,000.00—the exact amount Decedent would eventually bequeath to Appellant through her Will. However, as for the account itself, Decedent closed it prior to her death, they continue, and she left open three other accounts totaling the

$205,271.33 at issue. Significantly, Decedent signed no Designation of Beneficiary Form for any of these remaining accounts.

To Appellant's response that the bank statements for the remaining accounts listed Appellant as the beneficiary, Appellant and the Commonwealth assert this claim is misleading, for MFFCU's officer in charge of the investigation into the accounts confirmed that such a designation came not from Decedent but from the bank employee who relied upon erroneous computer records. The only Designation of Beneficiary form ever appearing on the account was for the Share 41 account that Decedent eventually closed, the investigator testified.

Under 20 Pa.C.S.A. § 6409, "Nontestamentary transfer on death," a financial institution may effect a nontestamentary transfer of an account upon death of the owner only if the owner had signed a "registration in beneficiary" form, which forms a contract between the owner and the financial institution to do so. Otherwise, the account is property of the estate. *See*, *generally*, *In re Estate of Wierzbicki*, 174 A.3d 1061 (Pa.Super. 2017).

Here, the record supports the position taken by Appellee and the Commonwealth that, without a Designation of Beneficiary form applicable to the accounts in question, there was no basis for Appellant's claim that she was their proper owner. Moreover, with no evidence reflecting an intent in Decedent to name Appellant as the sole beneficiary of the MFFCU accounts, the orphans' court appropriately determined Appellant engaged in self-dealing with estate assets. Under our standard of review, therefore, we find the record

supports the decision to incorporate the converted MFFCU bank accounts in the order of surcharge.

Other examples of self-dealing found by the orphans' court included both the payment of fees to Appellant and attorney and Appellant's sale of the estate's vacant mobile home to her daughter. With respect to contesting the court's order of surcharge comprising executrix and attorney's fees, Appellant simply reiterates her unavailing position that she relied "completely and totally" on Attorney's advice on setting the amounts of compensation received. For reasons explained above, more was due from Appellant in her role as executrix than strict adherence to the estate attorney's advice.

As for Appellant's handling of the estate's mobile home, the record shows Appellant sold the home, appraised at $49,900.00, to her daughter in exchange for daughter's agreement to forego taking her $20,000.00 specific bequest under Decedent's Will. The objecting parties complained that receiving less than one-half the value of the home was inequitable to the estate and, therefore, an unreasonable decision on Appellant's part.

Appellant essentially asserted, however, that the initial appraisal proved too high, for she had received only two offers when she first attempted to sell the home—one for $10,000.00, which she refused, and the other for $35,000.00, from a prospective buyer who was unable to raise the necessary funds to complete the deal. Moreover, she claimed the home had lost more value when a subsequent storm caused it to sustain significant water damage

costing the estate nearly $38,000.00 over and above the homeowner's insurance award to make necessary repairs.

To that explanation, Appellee and the Commonwealth argued, again, that it was unreasonable to spend nearly twice as much on repairs than the $20,000.00 payment the estate would receive from the sale to Appellant's daughter just one month later. The court, in its role as exclusive finder of fact and arbiter of credibility, inferred from the record that Appellant decided to provide her daughter with a newly-built home at a significant discount to be borne by the estate. Because the facts adduced before the court support this conclusion, we find no abuse of discretion in the imposition of a $15,000 surcharge reflecting the unreasonable loss stemming from Appellant's sale of the mobile home.

In summary, Appellant's defense that she relied upon the advice of counsel provided her with no guarantee of immunity from a surcharge. Instead, it was her obligation as the estate fiduciary to withstand the court's inquiry into, *inter alia*, the reasonableness and prudence of such reliance. The orphans' court, after examining the evidence and assessing the credibility of witnesses, determined that Appellant's administration of Decedent's estate failed to reflect such reasonableness and prudence. As we discern no abuse of discretion in the court's findings and conclusions in this regard, Appellant's appeal affords her no relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/22/2018