J-A10016-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF JUNE MILLAN, DECEASED. | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: DEAN SHANNON | : : : : : : : : | |
| | : | No. 2352 EDA 2024 |

Appeal from the Adjudication Entered July 8, 2024
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  2019-X3260

BEFORE:   PANELLA, P.J.E., BECK, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY BECK, J.:                              **FILED JUNE 27, 2025**

Dean Shannon ("Shannon") appeals from the adjudication confirming the First and Final Account of Joseph P. McDonald, Administrator d.b.n.c.t.a. of the estate of Shannon's late mother, June Millan, Deceased ("Decedent"). Shannon challenges the orphans' court's dismissal of his petition for surcharge as an untimely filed objection pursuant to Pennsylvania Rules of Orphans' Court Procedure 2.5 and 2.7.  Upon review, we reverse and remand for proceedings consistent with this decision.

Decedent died on September 11, 2019, leaving three adult children: Shannon, Dawn Quinn ("Quinn"), and Ronald Millan ("Millan").  Her will, dated October 18, 2018, named Shannon and Quinn as co-executors of her estate

_____

[*] Retired Senior Judge assigned to the Superior Court.

and divided her estate equally between Shannon, Quinn, and Millan. The day after Decedent's death, Quinn and Shannon, through then-Attorney Mark A. Hoffman ("Hoffman"),[1] filed a petition for letters testamentary seeking to probate Decedent's will and estimating the value of the estate as $500,000.00. Petition for Grant of Letters, 9/12/2019, at 1. The Montgomery County Register of Wills granted letters testamentary to Quinn and Shannon as duly qualified co-executors on September 16, 2019.

On July 6, 2021, Shannon filed a petition to remove Quinn as the co-executor, averring that: Quinn had engaged in unauthorized use of Decedent's credit card, resulting in criminal charges for access device fraud that she resolved by entering into an accelerated rehabilitative disposition ("ARD") program on December 10, 2019; Quinn used funds from the estate account without obtaining Shannon's signature as co-executor; and Quinn was experiencing financial problems. Petition to Remove Co-Executor, 7/6/2021, ¶ 3. Shannon requested that the orphans' court order Quinn to show cause why she should not be removed as co-executor and that the court order her to file an account. *Id.* Quinn filed a response, admitting that she had used Decedent's credit card without authorization, resulting in the ARD disposition, and denying all other allegations. Reply to Petition, 9/8/2021, at 1.

---

[1] Hoffman was subsequently disbarred in 2020. He died in May 2023.

Following a hearing on the petition, wherein both Shannon and Quinn agreed to resign as co-executors,[2] the orphans' court appointed Attorney Joseph P. McDonald as an independent administrator d.b.n.c.t.a (the "Administrator"), subject to his qualification before the Register of Wills.[3] *See* Orphans' Court Order, 1/28/2022, at 1. The court ordered Shannon, Quinn, and their respective counsel to deliver to the Administrator promptly, upon his request, "copies of all books, records and information pertaining to [Decedent's e]state," all assets of the estate, and "any and all documents related to this litigation … and any other pending litigation." *Id.* Notably, the court did not order Quinn to file an account as Shannon had requested. The Register granted letters of administration to the Administrator on April 18, 2022.

On March 21, 2023, the Administrator filed his first and final account ("Account") and accompanying petition for adjudication/statement of proposed distribution (collectively, "Account and Petition for Adjudication"), covering the period from his appointment on April 18, 2022 to February 28, 2023. *See* Pa.R.O.C.P. 2.4. According to the Account, the Administrator

---

[2] The transcript of this hearing does not appear in the certified record.

[3] *See* 20 Pa.C.S. § 3159 ("When an entire vacancy occurs in the office of personal representative before administration is completed, the register, in a case of intestacy, shall grant letters of administration de bonis non, and in the case of testacy, letters de bonis non cum testamento annexo, to the person or persons entitled thereto.").

received one asset upon his appointment: a Univest checking account in the amount of $173,813.61. After accounting for taxes, costs and fees, the Administrator proposed distributing the $160,905.61 balance in equal shares pursuant to the terms of Decedent's will. As required by Pa.R.O.C.P. 2.5, the Administrator provided notice that an audit of the Account would occur on May 1, 2023, and informed the parties that they must file any objections to the Account and Petition for Adjudication by April 3, 2023, later extended to May 1, 2023.

Millan was the only party to file objections pursuant to Pa.R.O.C.P. 2.7. He argued that, by proposing to distribute the estate in three equal shares, the Administrator neglected to consider that former co-executors Quinn and/or Shannon sold the assets of Decedent's IRA account without his knowledge and deposited the proceeds into the Univest checking account. Millan's Objections, 4/27/2023, ¶ (a)(i). According to Millan, Decedent had named him as a fifty percent beneficiary on her IRA account and split the remaining half between his siblings. *Id.* By dividing the checking account equally into thirds, Millan argued that he received less, and his siblings received more, than their respective shares of the IRA. *Id.* He also argued, inter alia, that the Account failed to account for the Kulicke & Soffa common stock (worth $4,000 at the time of Decedent's death) and Quinn's unauthorized use of Decedent's credit card. *Id.*, ¶ 1(b), (c).

On October 31, 2023, the day before the hearing to address Millan's objections, Shannon filed a petition for surcharge against Quinn and Hoffman.[4] He alleged that Quinn and Hoffman, when he served as counsel to the estate, had "conspired to misappropriate assets" from the estate, and requested that the orphans' court permit him to engage in discovery to gather evidence to prove this contention. Petition for Surcharge, 10/31/2023, ¶ 10. In support of this contention, he referenced Quinn's misuse of Decedent's credit card and Hoffman's admission to the Disciplinary Board of the Supreme Court of Pennsylvania in 2020, in connection with his disbarment by consent, that there was evidence that he had misappropriated client funds for his own use. *Id.*, ¶¶ 11-12. Shannon alleged that two assets listed in the March 2, 2021 inheritance tax return filed by Quinn when she was co-executor ($211,057.80 in "Inter-Vivos Transfers & Miscellaneous Non-Probate Property" and $4,000 in common stock of Kulicke & Soffa) remained unaccounted for. *Id.*, ¶¶ 7-9, 13-14.

At the hearing on Millan's objections to the Account and Adjudication, the parties agreed upon the amounts to be distributed to each beneficiary in lieu of litigating Millan's objections, but their positions diverged as to the

_____

[4] *See In re Estate of Westin*, 874 A.2d 139, 144-45 (Pa. Super. 2005) ("When the executor of an estate fails to fulfill his fiduciary duty of care, the court may impose a surcharge against him. A surcharge is a penalty imposed to compensate the beneficiaries for loss of estate assets due to the fiduciary's failure to meet his duty of care; however, a surcharge cannot be imposed merely for an error in judgment.").

timing of the distributions in light of Shannon's pending petition for surcharge. N.T., 11/1/2023, at 15-17. Shannon's counsel informed the court that Shannon had no objection to the Account and Petition for Adjudication, the agreed upon amounts for distribution, and the release of Millan's portion. *Id.* Shannon argued, however, that the court should not distribute his and Quinn's shares "to safeguard the remaining assets towards a later accounting or reallocation depending on the discovery results of the surcharge." *Id.* at 9. The Administrator was not opposed to retaining the funds in theory but questioned how the arrangement would work logistically because he was requesting to be discharged. *Id.* Quinn argued that Shannon should have filed objections to the Account and Petition for Adjudication and because he did not, the petition was procedurally defective, and the estate should be finalized. *Id.* at 10. The orphans' court informed the parties that it was not going to address Shannon's newly filed petition for surcharge at the hearing. *Id.* at 14-15. Ultimately, the record reflects that the parties resolved Millan's objections by agreeing to distribute $97,986.59 to Millan without reaching consensus on the distributions to Quinn and Shannon. *See id.* at 16-20.

Several days after the hearing, the orphans' court issued a preliminary decree and rule returnable upon Quinn to show cause why the court should not grant the petition for surcharge. On November 20, 2023, Quinn filed preliminary objections seeking to dismiss Shannon's petition for surcharge, arguing that the pleading failed to conform to an unspecified rule and was

- 6 -

legally insufficient because the petition for surcharge was untimely, having been filed 152 days after the Account was listed for audit, and because Shannon had consented to the entry of an adjudication at the November 1, 2023 hearing. *See generally* Quinn's Preliminary Objections, 11/20/2023; *see also* Pa.R.O.C.P. 3.9(b)(2), (4). A week later, Quinn filed an answer with new matter, wherein, inter alia, she raised the affirmative defenses of accord and satisfaction and laches. Quinn's Answer with New Matter, 11/27/2023, ¶¶ 17-18. The Administrator filed an answer with new matter, wherein the Administrator asserted affirmative defenses of waiver, laches, accord and satisfaction, and estoppel. *See* Administrator's Answer with New Matter, 11/28/2023, ¶¶ 24-25. From his perspective, the petition for surcharge should be dismissed because Shannon failed to object to the principal receipts section of the account, thereby waiving his right to challenge the estate's asset composition prior to the opening date of the Account. *Id.*, ¶¶ 18-20. He also argued that Shannon waived his right to object by not pursuing action against Quinn while he was co-executor and claimed that Shannon settled any claim at the hearing on Millan's objections. *Id.*, ¶¶ 21-25. Shannon filed replies to these pleadings, arguing, inter alia, that Quinn's filing of an answer mooted her preliminary objections and that the Account pertained only to the timeframe after Quinn was removed as executor. *See generally* Shannon's Replies, 11/28/2023.

Following argument on the petition for surcharge on January 12, 2024, the orphans' court issued an order dismissing the petition because Shannon failed "to raise such claim in a timely manner as an objection to the … Account [and Petition for Adjudication]." Orphans' Court Order, 1/18/2024, ¶ 1. The court overruled the preliminary objections to the petition for surcharge as moot. *Id.*, ¶ 2. Shannon filed an appeal to this Court at docket number 614 EDA 2024, which we quashed because the order was an interlocutory, non-final order.

Upon remand, the orphans' court issued an adjudication distributing $97,986.59 to Millan and $30,496.54 each to Quinn and Shannon and directed any remaining reserves to be divided in thirds—the agreed-upon amounts at the November 1, 2023 hearing. Orphans' Court Adjudication, 7/8/2024, at 1-2.

Shannon filed a timely notice of appeal. Shannon and the orphans' court complied with Rule 1925 of the Pennsylvania Rules of Appellate Procedure. He presents a single issue on appeal, questioning whether the orphans' court abused its discretion in dismissing Shannon's petition for surcharge as untimely. Shannon's Brief at 4.

We may reverse an orphans' court order only upon a clear error of law or an abuse of discretion. *In re Estate of Westin*, 874 A.2d at 142. We defer to the orphans' court's factual findings but not its legal conclusions. *In re Estate of Walter*, 191 A.3d 873, 879 (Pa. Super. 2018).

Shannon contends that the orphans' court erred by dismissing his petition as an untimely filed objection to the Account and Petition for Adjudication instead of considering the petition on the merits. Shannon's Brief at 11. He emphasizes that the court has broad equitable powers over an estate, which it may exercise even after final distributions have been made. *See id.* (citing 20 Pa.C.S. § 3521, which authorizes the orphans' court to provide relief "as equity and justice shall require" to a party in interest who files, "within five years after the final confirmation of any account of a personal representative," a "petition to review any part of the account or of an auditor's report, or of the adjudication, or of any decree of distribution, setting forth specifically alleged errors therein"). Considering that the estate had not been adjudicated, Shannon argues that the serious concerns that he presented warranted exploration in the interests of justice, especially given the court's power to construe the rules liberally and to disregard defects in procedure. *Id.* at 14-15 (citing Pa.R.O.C.P. 1.2(b)).

The law is clear that the orphans' court shall not confirm an account or approve a statement of proposed distribution unless the accountant provided written notice of the filing of the account at least twenty days prior to the audit. Pa.R.O.C.P. 2.5(a), (d). Pursuant to Rule 2.5(h),

> The notice shall contain the information provided in subparagraphs (1), (2), and (3), as applicable, and, in all cases, shall contain a statement as provided in subparagraph (4):
>
> > (1) the accountant's position on any known dispute or interpretation question, together with a copy of any instrument

or material parts thereof containing any provision which forms the basis of the dispute or question;

(2) the accountant's understanding of the nature of each contested or unpaid claim, a detailed explanation that specifically identifies the claim, whether the claim is admitted or contested, and if admitted, why the claim is not being paid in full;

(3) if the Account and petition for adjudication/statement of proposed distribution is not sent with the notice pursuant to subparagraph (d) of this Rule, the notice shall state the amount of all compensation paid or payable to the accountant, all attorneys' fees paid or payable, and that copies of the Account and petition for adjudication/statement of proposed distribution are available upon request; and

(4) that any recipient of the notice who objects to any transaction shown in the Account, any interpretation or position taken by the accountant, or to any payment, failure to pay, distribution proposed, or any other aspect of the petition for adjudication/statement of proposed distribution must file written objections in accordance with Rule 2.7 with the clerk on or before the audit date …, and if there is no such objection, then no action need be taken as such recipient will be deemed to have approved the Account, as stated, and agreed with the accountant's position on any dispute or question as set forth in the petition for adjudication/statement of proposed distribution, if any, and with the accountant's proposed disbursements and distribution.

Pa.R.O.C.P. 2.5(h). Rule 2.7(a), in turn, requires all objections to an account and/or a petition for adjudication/statement of proposed distribution to be filed on or before the time and date of the audit. Pa.R.O.C.P. 2.7(a).

After reviewing Rules 2.5 and 2.7, the Administrator's Account and Adjudication, and the petition for surcharge, and considering the parties' arguments, we conclude that the orphans' court erred by dismissing the petition for surcharge as an untimely filed objection to the Account and

Petition for Adjudication. The orphans' court decided that Shannon missed his "last shot" by failing to file an objection to the Account and Petition for Adjudication based upon the non-inclusion of the missing assets in the starting balance, on or before the audit of the Account pursuant to Rules 2.5(h)(4) and 2.7(a). Orphans' Court Opinion, 9/16/2024, at 7. By its own terms, however, the Account specified that it was "[a]ccounting for the period: April 18, 2022 to February 28, 2023." Account, 3/21/2023, at 1. **Accord Appeal of Leslie**, 63 Pa. 355, 363 (1870) ("[B]eing a partial account expressly, and so intended by the executors, it did not operate in any way on items of charge or discharge not included in it, and it concluded only those that were."). Shannon did not dispute the accuracy of the starting balance of the assets at the time the Administrator took over administration of the estate. What he challenged was the conduct of Quinn and Hoffman prior to the Administrator's appointment. Although he had the power to do so,[5] the Administrator did not take a position on any disputes or questions in the petition for adjudication/statement of proposed distribution, including the propriety of Quinn's and Hoffman's conduct and whether a surcharge was warranted. **See** Petition for Adjudication, 3/21/2023, ¶ 15. Instead, he accounted for the sole asset that

_____

[5] **See** 20 Pa.C.S. § 3326 ("An administrator de bonis non, with or without a will annexed, shall have the power to recover the assets of the estate from his predecessor in administration or from the personal representative of such predecessor and, except as the will shall provide otherwise, shall stand in his predecessor's stead for all purposes, except that he shall not be personally liable for the acts of his predecessor….").

he was given and proposed the distribution of that asset in accordance with Decedent's will. Shannon agreed with the Administrator's proposed disbursements and distribution and approved of the Account as stated; he did not have any objections "to any transaction shown in the Account, any interpretation or position taken by the accountant, or to any payment, failure to pay, distribution proposed, or any other aspect of the petition for adjudication/statement of proposed distribution." Pa.R.O.C.P. 2.5(h)(4). As such, he need not have filed "written objections in accordance with Rule 2.7 … on or before the audit date." *See id.* Therefore, the orphans' court erred by dismissing Shannon's petition for surcharge as an untimely-filed objection to the Account and Adjudication.

The orphans' court's Rule 1925 opinion vaguely alludes to other reasons that it may have summarily dismissed the petition for surcharge, stating that Shannon should have sought discovery in conjunction with his petition to remove Quinn as co-executor in July 2021, when Hoffman was still alive. *Id.* at 4-6. The orphans' court summarily concluded that Shannon neglected his duty as co-executor to investigate the alleged embezzlement when it was happening and decided that Shannon failed to exercise due diligence by filing a petition for surcharge years after the alleged fraud, which was well beyond the statute of limitations for fraud in a non-equitable action. *Id.* at 5-6.

The record is devoid of facts one way or the other concerning Shannon's performance of his duties as co-executor. Furthermore, other than the mere

passage of time and death of Hoffman, the record does not reveal whether Shannon was duly diligent in failing to act to another's prejudice, such that the equitable doctrine of laches may apply to bar a surcharge petition. **See In re Marushak's Estate**, 413 A.2d 649, 651 (Pa. 1980) ("The application of the equitable doctrine of laches does not depend upon the fact that a certain definite time has elapsed, but whether, under the circumstances of the particular case, the complaining party is guilty of want of due diligence in failing to act to another's prejudice."). To the extent the orphans' court denied the petition on the basis of the affirmative defense of laches, it erred in so doing at this juncture, without the development of a factual record and without any party filing a motion for judgment on the pleadings. **See Fulton v. Fulton**, 106 A.3d 127, 131 (Pa. Super. 2014) ("The existence of laches is a factual issue to be decided according to the circumstances in each particular case.").

The record is clear that no account of the estate has been performed for the period prior to April 18, 2022, despite Shannon's explicit request for an account in connection with his allegations of fraud in the petition to remove Quinn as co-executor. Had the court ordered Quinn to perform an account covering this timeframe, Shannon could have filed the appropriate objections and a petition for surcharge at that time. Instead, Shannon's recourse was to file a stand-alone petition for surcharge. Whether or not that petition is ultimately successful remains to be seen, but it was not procedurally incorrect.

Because we conclude that the orphans' court erred as a matter of law in dismissing Shannon's petition for surcharge at this juncture, we vacate the adjudication and remand for proceedings consistent with this decision.

Adjudication vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/27/2025