J-S27013-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ESTATE OF MARCO LOPEZ, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: SISSI PACHECO | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2948 EDA 2024 |

Appeal from the Decree Entered October 3, 2024
In the Court of Common Pleas of Philadelphia County
Orphans' Court at No: 343AP of 2022

BEFORE: STABILE, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:                    **FILED FEBRUARY 5, 2026**

This appeal concerns a dispute over the validity of two competing wills and the distribution of the estate of Marco Lopez (the decedent). Sissi Pacheco (Appellant), the decedent's niece, relied upon a will that was dated September 22, 2018 (the 2018 Will) to obtain letters of administration for the estate. Subsequently, Erik Estuardo Angel López (Appellee), the decedent's nephew, appealed to the Court of Common Pleas of Philadelphia County (orphans' court) to revoke those letters of administration, while also asserting that another will, dated December 23, 2017 (the 2017 Will), should be probated. The orphans' court found merit in Appellee's claims and entered a decree removing Appellant as administratrix and finding the 2018 Will to be null and void. Appellant now argues that the orphans' court lacked jurisdiction; the

_____

[*] Former Justice specially assigned to the Superior Court.

2018 Will was valid; and the statute of limitations barred Appellee's action. Finding merit in the latter claim, we must vacate the decree of the orphans' court.

The relevant facts in this case are gleaned from the certified record. The decedent was born in Guatemala on September 22, 1942, and he was a dual citizen of both that country and the United States, where he had resided since 1972. As of 1988, the decedent was a resident of Philadelphia, but he often traveled to Guatemala to visit family members.

In 2015, the decedent was diagnosed with cancer, and Appellant lived in New Jersey at that time. After the decedent's cancer diagnosis, and until his death, Appellant assisted him in receiving treatment for his illness and in travelling with him to Guatemala. The decedent passed away on September 17, 2018.

Appellant obtained letters of administration for the decedent's estate on March 28, 2019. The letters were issued by the Philadelphia register of wills. Appellant also attempted to probate the 2018 Will, which was dated September 22, 2018.

The 2018 Will provided that Appellant was the decedent's sole heir. Although Appellant was appointed as the representative of the decedent's estate, she was unable to probate the 2018 Will in part because it was dated five days *after* the date of the decedent's death. *See* N.T. Hearing, 2/1/2024, at 48-49.

The 2018 Will was drafted by an attorney, James Valentin, who was unable to fully account for the dating error. Both Valentin and Appellant claimed that the 2018 Will was executed on September 12, 2018, five days *before* the decedent's death. Valentin suggested that the incorrect date of September 22 had inadvertently been used for the 2018 Will because it was the decedent's birthday. Valentin had erroneously written that date because he had been reviewing the decedent's driver's license when entering information into the document as a witness to its execution. ***See*** N.T. Hearing, 1/31/2024, at 99-100.

In addition to the incorrect date, the decedent's signature on the 2018 Will appeared inconsistent with how his name was usually signed. The decedent's name was written several times in the document as, "Marco Antonio Lopez," but it was undisputed that he rarely, if ever, used his full name for signatures unless required to do so.

Valentin attempted to clarify that the 2018 Will was an amendment to a prior version he had drafted for the decedent and had executed on July 13, 2018. The amendment was purportedly necessary to provide for the distribution of a property in Guatemala – one it turned out that the decedent had never owned. ***See id***., at 90-91, 115.

Valentin's account of the work he did for the decedent could not be substantiated because Valentin claimed to have destroyed the original version of the 2018 Will. ***See id***., at 114. Appellant maintained that she had not known that Valentin helped the decedent execute that version of the 2018 Will

- 3 -

because she "wasn't interested" in such things. N.T. Hearing, 2/1/2024, at 35-36. Yet, in Appellant's own account, she had arranged for Valentin to assist the decedent in creating that document. *See id*.

Finally, the witnesses to 2018 Will did little to corroborate its authenticity. One witness described the decedent as looking like a "movie star" at the time he signed it, which would seem somewhat at odds with the decedent passing away from terminal cancer just five days after the putative date of the 2018 Will's execution. *See id*., at 75. The notary who witnessed and notarized the 2018 Will was subpoenaed to produce her records from the relevant dates, and she did not do so. *See id*., at 54-55. The notary also admitted to violating notarial protocols by failing to verify the signatures and dates on the 2018 Will. *See id*., at 56.

The record is unclear as to when and how Appellee learned of Appellant's involvement with the decedent's estate. Appellee testified that he first learned of the 2018 Will's existence "[a]round the end of 2019," while attempting to probate the 2017 Will as an executor in Guatemala. *See* N.T. Hearing, 10/26/2023, at 93. He also learned at that time that Appellant had been granted letters of administration in Philadelphia. *See id*., at 92-93. However, Appellee decided not to seek the revocation of those letters until after he had completed probate proceedings in Guatemala. *See id*., at 93.

The decedent had executed the 2017 Will in Guatemala with the help of his personal attorney. The 2017 Will contained no specific bequests, and it named Appellee as the decedent's sole heir; it also specified that Appellant

was disinherited, and that any subsequent will naming Appellant as an heir should be invalidated.

The decedent completed an affidavit the day after executing the 2017 Will in which he again emphasized that he intended for Appellee to be his only heir. It is notable that the decedent also expressed concern in the affidavit that Appellant might attempt to take advantage of his illness by coercing him to make her an heir in a subsequent will. Further, the decedent stated in the affidavit that he wished for Appellee to receive a property he owned in Philadelphia, located at 5435 North American Street.

Appellee became the executor of the 2017 Will on March 14, 2019, in Guatemala. *See* N.T. Hearing 1/31/2024, at 11. Later, in 2020, during the probate proceedings in Guatemala relating to the 2017 Will, Appellee contacted an attorney in Pennsylvania. At some point, Appellee discovered that Appellant had sold the decedent's Philadelphia property and appropriated all of the estate's other assets for her own personal use. *See id*., at 11, 13, 15.

Appellee gave conflicting accounts as to when he learned that Appellant had obtained letters of administration and began benefiting personally from the Estate's property. He was directly asked about this date on two occasions. At a hearing held on October 26, 2023, he testified that an attorney informed him late in "2019," and he did not provide the month of that year. N.T. Hearing, 10/26/2023, at 93.

At the hearing held on January 31, 2024, he testified that he did not learn about the letters of administration until much later, in "2021," and again, he was unable to recall the month of that event or any of the surrounding circumstances:

> [Counsel]: [T]his is important now -- when did you learn that letters of administration of your uncle's estate were awarded or given to your cousin, [Appellant], here in Philadelphia?
>
> [Appellee]: 2021.
>
> [Counsel]: Okay. So that would be -- okay. 20[21]. What month?
>
> [Appellee]: I don't remember.

N.T. Hearing, 1/31/2024, at 20-21.

Similarly, Appellee could not recall when he first learned that Appellant had sold the decedent's property in Philadelphia:

> [Counsel]: When did you learn . . . when did you learn that the property that your uncle owned on North American Street here in Philadelphia had been sold? When did you learn that?
>
> [Appellee]: I don't remember the publication that came out in Google. That's where it's recorded. I don't remember.
>
> [Counsel]: Is that how you learned that the property had been sold, on the computer?
>
> [Appellee]: Yes. Yes.

*Id*., at 22. He also could not remember when he first hired an attorney in the United States to probate the 2017 Will. *See id*., at 25.

It was not until March 25, 2022, that Appellee commenced the present case by filing a notice of appeal in the orphans' court, seeking review of the

decree by the register of wills granting letters of administration to Appellant. Then, on April 8, 2022, Appellee filed a petition for citation to the orphans' court to revoke the letters of administration issued to Appellant, remove Appellant as the administrator of the decedent's estate, and probate the 2017 Will.

On September 6, 2022, the orphans' court directed Appellant to show cause why the decree from the Philadelphia register of wills granting her letters of administration should not be revoked. Appellant filed an answer on September 23, 2022, and the orphans' court thereafter held hearings at which the parties presented witness testimony and documentary evidence.

On October 3, 2024, the orphans' court entered a decree and an accompanying memorandum, ruling that the 2018 Will was null and void. The decree also revoked the letters of administration granted to Appellant, removed her as administratrix of the decedent's estate, and permitted Appellee to have the 2017 Will submitted for probate. The orphans' court then filed a 1925(a) opinion giving the reasons why those rulings should be upheld. *See* Orphans' Court 1925(a) Opinion, 12/30/2024, at 12-17.

In its opinion, the orphans' court addressed the statute of limitations argument Appellant made in her pleadings and during a hearing before the court, focusing solely on her purported fraud in obtaining letters of administration for the estate. *See id*. The orphans' court found that Appellant's conduct had tolled the statute of limitations because she had fraudulently obtained the letters of administration by neglecting to provide

- 7 -

written notice to the intestate heirs of the estate; the orphans' court also found that Appellant intentionally "dissipated the [e]state's assets for her sole benefit before [Appellee] had a chance to learn about the appointment." Orphans' Court 1925(a) Opinion, 12/30/2024, at 14.

Although the orphans' court found that Appellant's fraud had tolled the statute of limitations, there was no mention in the opinion as to how that tolling period enabled Appellee to timely file his appeal. *See id*. The orphans' court did not discuss precisely when Appellant's fraudulent acts occurred, when Appellee could have reasonably learned of those actions through the exercise of due diligence, or when Appellee first began taking measures to vindicate his interests in the estate. *See id*.

In her brief, Appellant now raises the following three issues for our consideration:

> 1. Did the [Orphans'] Court have original jurisdiction over this matter?
>
> 2. Was [Appellee's] Petition/Appeal Barred by the Applicable Statute of Limitations?
>
> 3. Did the [Orphans'] Court err in finding the September 22, 2018[,] Will was Null and Void?

Appellant's Brief, at 4 (suggested answers omitted).

Appellant's first claim is that the trial court lacked original jurisdiction to consider Appellee's appeal of the decree entered by the register of wills. *See* Appellant's Brief, at 18-19.

When reviewing a decree entered by the orphans' court, this Court must determine whether the record is free from legal error and the orphans' court's factual findings are supported by the evidence. **See In re Estate of Walter**, 191 A.3d 873, 878 (Pa. Super. 2018). The orphans' court sits as the fact-finder, it determines the credibility of the witnesses; on review, we will not reverse credibility determinations absent an abuse of that discretion. **See In re Estate of Geniviva**, 675 A.2d 306, 310 (Pa. Super. 1996).

The same deference is not afforded to the legal conclusions of the orphans' court. **See id**. "[W]here the rules of law on which the [court] relied are palpably wrong or clearly inapplicable, we will reverse the [court's] decree." **Horner v. Horner**, 719 A.2d 1101, 1103 (Pa. Super. 1998). Whether the orphans' court has original jurisdiction is a pure question of law, subject to a *de novo* standard of review. **See Commonwealth v. Seiders**, 11 A.3d 495, 496-97 (Pa. Super. 2010).

In the present case, Appellant argues that only the local register of wills has original jurisdiction over the revocation of letters of administration, precluding the orphans' court from entering the decree now on review.

As this Court has explained, however, while the local register of wills has original jurisdiction to issue letters of administration, their issuance may be contested in an appeal to the orphans' court:

> Pursuant to 20 Pa.C.S.A. § 901, original jurisdiction over petitions for letters of administration rests with the local register of wills. 20 Pa.C.S.A. § 901 ("Within the county for which he has been elected or appointed, the register shall have jurisdiction of the

probate of wills, the grant of letters to a personal representative, and any other matter as provided by law."). **The orphans' court has jurisdiction over any appeal therefrom. 20 Pa.C.S.A. §§ 711(18), 908. "The register's decision to issue letters is a judicial act. A party contesting that act may appeal to the orphans' court."** *In re Tigue*, 926 A.2d 453, 456 (Pa. Super. 2007).

*In re Est. of Wisniewski*, 283 A.3d 811, 813 (Pa. Super. 2022) (emphasis added).

Letters of administration may be revoked "whenever it appears that the person to whom the letters were granted is not entitled thereto." *In re Est. of Sidlow*, 543 A.2d 1143, 1146 (Pa. Super. 1988) (quoting 20 Pa.C.S. § 3181(a)). Crucially, under 20 Pa.C.S.A. § 3182, "[t]he [orphans'] court shall have **exclusive** power to remove a personal representative when [s]he:

> (1) is wasting or mismanaging the estate, is or is likely to become insolvent, or has failed to perform any duty imposed by law; or
>
> * * * *
>
> (5) when, for any other reason, the interests of the estate are likely to be jeopardized by his continuance in office.
> *Id.* at § 3182.

*Estate of Hatcher*, No. 2046 EDA 2024 (Pa. Super. filed June 24, 2025) (unpublished memorandum) (quoting 20 Pa.C.S.A. § 3182) (emphasis added). "Any party in interest seeking to challenge the probate of a will or who is otherwise aggrieved by a decree of the register, or a fiduciary whose estate or trust is so aggrieved, may appeal therefrom to the court within one year of the decree[.]" 20 Pa.C.S.A. § 908(a).

- 10 -

Here, Appellant was issued letters of administration by the Philadelphia County register of wills, and Appellee contested that judicial act by appealing to the orphans' court. The orphans' court, in turn, exercised its authority to review the issuance of letters of administration to Appellant, ultimately revoking them and determining that the 2018 Will was null and void. All of these actions were within the authority afforded to the orphans' court by 20 Pa.C.S.A. § 901. *See In re Tigue*, 926 A.2d at 456 ("A party contesting [the issuance of letters of administration] may appeal to the orphans' court.").

Moreover, the orphans' court did not improperly exercise any of the statutory authority reserved for the register of wills because letters of administration were not issued to Appellee in this case. The orphans' court instead explained to the parties that, upon the removal of Appellant as the administratrix of the decedent's estate, Appellee would be permitted to submit the 2017 Will for probate. Thus, the orphans' court properly exercised jurisdiction in its capacity as a reviewing court.

Appellant's second claim is that the orphans' court erred in entering the subject decree because Appellee's appeal to the orphans' court was barred by the statute of limitations. In response, Appellee argues that since Appellant fraudulently obtained letters of administration for the decedent's estate, Appellant concealed her misappropriation of the estate's property, and the 2018 Will was forged, the applicable statute of limitations was tolled and did not bar his claims. *See* Appellee's Brief, at 5.

- 11 -

"[W]hether the statute of limitations has run on a claim is generally a question of law for the trial judge . . . . Additionally, the interpretation and application of a statute is a question of law that compels plenary review to determine whether the court committed an error of law." ***Wilson v. Transp. Ins. Co.***, 889 A.2d 563, 570 (Pa. Super. 2005) (internal quotation marks and citations omitted).

The Probate, Estates and Fiduciaries Code grants the right of appeal to any "party in interest" who is "aggrieved" by a decree of the Register of Wills within ***one year*** of the date on which the decree was entered. ***See*** 20 Pa.C.S.A. § 908(a) (emphasis added). An aggrieved party in interest may, for these purposes, include a beneficiary under an unrevoked will which has not been probated. ***See generally In re Ash's Estate***, 41 A.2d 620 (Pa. 1945); ***see also In re Estate of Thomas***, No. 1297 WDA 2023 (Pa. Super. filed October 24, 2024 (unpublished memorandum).

Under the doctrine of fraudulent concealment, the running of the statute of limitations may be tolled. ***See In re Est. of Tito***, 150 A.3d 464, 469 (Pa. Super. 2016). This doctrine prohibits a defendant from using the statute of limitations as a bar to claims against her if

> through fraud or concealment, [s]he causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts. The doctrine does not require fraud in the strictest sense encompassing an intent to deceive, but rather, fraud in the broadest sense, which includes an unintentional deception. **The plaintiff has the burden of proving fraudulent concealment by clear, precise, and convincing evidence**.

*Id*. (internal citations omitted, emphasis added).

"The law is clear that fraud or deceit tolls the statute of limitations until such time as the fraud has been discovered by the exercise of due diligence." ***J.J. DeLuca Co., Inc. v. Toll Naval Assocs***., 56 A.3d 402, 412 (Pa. Super. 2012) (quoting ***Rothman v. Fillette***, 469 A.2d 543, 546 n.3 (Pa. 1983) (citations omitted)). "[T]he party alleging forgery has the burden of proving the existence of the forged document by clear, direct, precise, and convincing evidence. Further, we observe that because forgery presents an issue of fact, the resolution of the issue necessarily turns on the court's assessment of the witnesses' credibility." ***In re Estate of Cruciani***, 986 A.2d 853, 855 (Pa. Super. 2009).

In the present case, it is undisputed that Appellee commenced the present action on March 25, 2022, and that this date was beyond the applicable statute of limitations period. Appellant received the letters of administration on March 28, 2019. This meant that, under 20 Pa.C.S.A. § 908(a), Appellee had to commence the present action within one year of that latter date, by March 28, 2020. Since Appellee did not do so until March 25, 2022, his action could only be timely if Appellant's fraudulent concealment tolled the limitations period from March 28, 2020, until March 25, 2021 (one year prior to this action's commencement date).

Appellee has argued that the limitations period was tolled by Appellant's failure to identify him as an heir when she applied for letters of administration

for the estate; by concealing her personal use of the estate's assets; and by several other breaches of her fiduciary duties as the administrator of the estate. *See* Appellee's Brief, at 5. It is true that Appellant's conduct with respect to the decedent's estate is highly suspect – of that, there can be no doubt. However, Appellee had the burden of proving by "clear, precise, and convincing evidence," that Appellant's fraudulent concealment of her actions justified the tolling of the limitations period. At none of the hearings in this case did Appellee specify when exactly he learned of the Appellant's questionable conduct, or how he exercised due diligence in discovering it.

In fact, Appellee was notably vague in this regard, as well as inconsistent. He admitted at one hearing that he learned "[a]round the end of 2019" or, at the latest, in early 2020 that Appellant had obtained letters of administration for the decedent's estate, and that she was attempting to probate the 2018 Will. N.T. Hearing, 10/26/2023, at 93. At another hearing in this matter, he stated only that he learned Appellant had obtained letters of administration some time in "2021," but he could not remember the date of that year in which that fact had come to light. *See* N.T. Hearing, 1/31/2024, at 20-21.

The orphans' court correctly ruled that the statute of limitations could have been tolled during the period in which Appellee could seek the revocation of Appellant's letters of administration. But crucially, the orphans' court made no findings regarding the specific length of the tolling period. This omission,

we suspect, necessarily resulted from Appellee's inability to carry his burden of proving that he could not have discovered Appellant's receipt of letters of administration (and her appropriation of the estate's property) through the exercise of due diligence until March 25, 2021. *See* Orphans' Court, 12/30/2024, at 12-14.

Accordingly, as a matter of law, the record does not support the orphans' court's finding that the statute of limitations was tolled long enough for Appellee's action to avoid the procedural bar of section 908. Thus, Appellee's claims were barred by the statute of limitations, and the orphans' court's decree must be vacated.

Having ruled that Appellee's petition was untimely, and that the record does not support the tolling of the statute of limitations, it is unnecessary for this Court to consider Appellant's third and final claim on appeal concerning the orphans' court's ruling on the validity of the 2018 Will. Regardless, Appellant already has attempted to probate the 2018 Will, and she was unsuccessful in doing so. Our disposition here is not meant in any way to impede Appellee from submitting the 2017 Will for probate, or from asking the orphans' court to direct Appellant to file an account of her administration of the Estate. *See* 20 Pa.C.S.A. §§ 3133, 3501.1.

Decree vacated. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>2/5/2026</u>